**Mark WARES, Plaintiff,**

v.

**D.A. VanBEBBER, Defendant.**

**No. 99–3362–JWL.**

United States District Court, D. Kansas.

Nov. 8, 2002.

Mark A. Wares, Canon City, CO, for Pro se.

Brian R. Johnson, Topeka, KS, Rebecca Ann Weeks, Kansas Attorney General, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff brings this 42 U.S.C. § 1983 action alleging that defendant denied him the right to freely exercise his religion. Specifically, Mr. Wares alleges that defendant Chaplain VanBebber, in his personal and official capacity, violated plaintiff's First Amendment right to freely exercise his religion by intentionally interfering with his ability to observe the Jewish holiday of Sukkot in 1997 and 1998.[1] Plaintiff seeks both monetary and injunctive relief. This matter comes before the court on defendant's motion to dismiss (Doc. 44). Defendant contends that the Eleventh Amendment bars plaintiff's claims for monetary damages in the Chaplain's official capacity and qualified immunity bars such claims in his personal capacity. Moreover, defendant contends that plaintiff fails to state a claim for relief under § 1983.

For the reasons set forth in more detail below, the motion is granted in part and denied in part. Specifically, the motion is granted as to plaintiff's request for damages against defendant in his official capacity because the Eleventh Amendment bars such actions. The motion is denied, however, as to plaintiff's damage claims against defendant in his individual capacity because Mr. Wares' complaint alleges a violation of a clearly established constitutional right. For the same reason, defendant's motion to dismiss plaintiff's complaint for failure to state a claim for relief is also denied.

---

1. Sukkot (also spelled Sukkoth, Succoth, Sukkos, Succot, or Succos) is "a Jewish autumn festival of double thanksgiving (one of the three Pilgrim festivals of the Old Testament) that begins on the 15th day of Tishri (in September or October), five days after Yom Kippur, the Day of Atonement." The New Encyclopedia Britannica, Vol. 11 at 362 (15th ed.1994). During the holiday, "[i]deally, Jews are to reside in booths—walled structures covered with thatched roofs—for the duration of the festival; in practice, most observant Jews take their meals in the sukka ("booth") but reside at home." *Id.* at Vol. 22, 426.

## BACKGROUND

Plaintiff Mark Wares is an inmate incarcerated at the Canon City correctional facility in Canon City, Colorado, but was incarcerated at the Hutchinson Correctional Facility ("HCF"), in Hutchinson, Kansas at all times relevant to this complaint.

In his complaint, the plaintiff makes the following relevant allegations. On December 10, 1996, while incarcerated at HCF, plaintiff converted to Orthodox Chassidic[2] Judaism. Plaintiff was not permitted to observe Sukkot in 1997. Prior to the 1998 Sukkot holiday, plaintiff requested that Chaplain VanBebber allow him to eat his meals under a Sukka in observance of the religious holiday, but the defendant refused to accommodate plaintiff's request. The Chaplain intentionally misled plaintiff and other Jewish inmates by suggesting that Torah law permitted inmates to observe Sukkot by wearing a napkin on their head. The Chaplain ignored Kansas Department of Corrections manuals and other information describing Sukkot requirements. Finally, plaintiff alleges that the Chaplain's conduct was motivated by personal animus against individuals who practice Judaism.

## ANALYSIS

### I. Standard

 When, as here, a plaintiff is proceeding pro se, the court construes his or her pleadings liberally and holds the pleadings to a less stringent standard than formal pleadings drafted by lawyers. *McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir.2001); accord *Shaffer v. Saffle*, 148

F.3d 1180, 1181 (10th Cir.1998) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In other words, "[n]ot every fact must be described in specific detail, ... and the plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him should be allowed to amend his complaint." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir.1996) (quoting *Hall*, 935 F.2d at 1110). The liberal construction of the plaintiff's complaint, however, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based," and "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.* (quoting *Hall*, 935 F.2d at 1110).

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief," *Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir.2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir.2001). The issue in resolving a motion such as this is "not whether [the] plaintiff

---

**2.** The court chooses this spelling, as opposed to "Hasidic" because that is the spelling utilized by the plaintiff. Hasidism, also spelled Chasidism or Chassidism, is "a pietistic movement within Judaism that began in the 18th century in Poland, ... influenced millions of Jews, and persists today in small but vigorous groups, especially in the United States and

Israel." The New Encyclopedia Britannica, Vol. 5 at 739 (15th ed.1994). While the court has reason to believe that Orthodox Judaism and Chassidic Judaism are two distinct branches of the religion, the court respectfully defers to the plaintiff's characterization of his religion as Orthodox Chassidic Judaism.

will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002) (quotation omitted).

### ● Immunity From Suit

■■ Prior to turning to the merits of plaintiff's claims, the court must first address the issue of immunity. *Frazier v. Simmons*, 254 F.3d 1247, 1252 (10th Cir. 2001) (explaining that because defendant "raises Eleventh Amendment immunity, which is a challenge to the subject matter jurisdiction of the district court, this issue must be resolved before a court may address the merits") (internal quotations and citation omitted). Plaintiff asserts monetary claims against Chaplain VanBebber in both his official and personal capacity. "Personal-capacity suits seek to impose personal liability upon a government official for actions he [or she] takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Monell v. Dept. of Soc. Serv. of New York City*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The type of immunity afforded to defendants turns on whether the suit is against the defendant in his or her individual or official capacity. *Id.*

### A. Eleventh Amendment Immunity

■■ The Eleventh Amendment bars actions for damages against state officials in their official capacity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Kentucky v. Graham*, 473 U.S. 159, 165–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In this action, Mr. Wares seeks money damages against Chaplain VanBeb-ber, in his official capacity as a state official employed at HCF. Because the Eleventh Amendment bars such actions, the motion to dismiss plaintiff's damage claims against defendant in his official capacity is granted.

### B. Qualified Immunity

■ Qualified immunity protects government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The purpose of qualified immunity is to evade excessive disruption of governmental functions and to dispose of frivolous claims in the early stages of litigation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The Supreme Court has reiterated that qualified immunity gives officials "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'" *Behrens v. Pelletier*, 516 U.S. 299, 308, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Consequently, the Supreme Court has explained "that courts should resolve the 'purely legal question,' *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), raised by a qualified immunity defense 'at the earliest possible stage in litigation.'" *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir.1995) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

■ "In evaluating a claim for qualified immunity, the court must first determine whether, considered in the light most favorable to the plaintiff, the facts alleged state the violation of a constitutional

right." *PeTA, People for the Ethical Treatment of Animals v. Rasmussen,* 298 F.3d 1198, 1207 (10th Cir.2002) (citing *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "If so, the court must go on to determine whether the constitutional right was clearly established at the time of injury." *Id.* "If the answer to either of these questions is no, the defendant is entitled to qualified immunity." *Id.*

● **Violation of a Constitutional Right**

■ The first inquiry is whether Mr. Wares has alleged facts that state a violation of a constitutional right. The United States Supreme Court has held that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison" and that "inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (internal citation omitted). "In some instances, however, constitutional rights must be curtailed due to the very fact of incarceration or for valid penological reasons." *Beerheide v. Suthers,* 286 F.3d 1179, 1184 (10th Cir. 2002) (citing *O'Lone,* 482 U.S. at 348, 107 S.Ct. 2400). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* (quoting *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).

■ To balance the prisoner's constitutional rights with legitimate penal interests, the court must determine:

(1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Suthers,* 286 F.3d at 1185 (citing *Turner,* 482 U.S. at 89–91, 107 S.Ct. 2254). Mr. Wares, however, need not allege that prison officials completely denied his right to observe a religious practice in order to state a violation of the free exercise clause. *Makin v. Colo. Dept. of Corr.,* 183 F.3d 1205, 1213 (10th Cir.1999). Plaintiff sufficiently states a constitutional violation by alleging that prison officials placed an unreasonable burden upon him that diminished the spiritual experience he otherwise could have gained by observing Sukkott. *Id.* (finding that testimony demonstrated that burden defendants placed on plaintiff diminished the spiritual experience he otherwise could gain through Ramadan, which was "sufficient to constitute an infringement on his right to freely exercise his religion").

In his complaint, Mr. Wares alleged that he converted to Orthodox Chassidic Judaism on December 10, 1996. While plaintiff admitted in his complaint that he was not familiar with all of the religious requirements of Sukkot in 1997, he also alleges that he "was not permitted to fulfill the Torah mandated observance to dwell in a Sukkot" that year. Plaintiff further alleges that defendant intentionally misled plaintiff by advising him and other followers that they could satisfy Torah requirements by dining with a napkin over their head. According to Mr. Wares, the defendant also interfered with his right to observe Sukkot in 1998 by refusing his request to dine in a Sukka during the religious holiday. Mr. Wares believes Chaplain VanBebber committed these acts intentionally and was motivated by personal animus towards followers of Juda-

ism. These allegations, taken as true for purposes of this motion, are sufficient to state a violation of plaintiff's First Amendment right to reasonably exercise his religious beliefs.

Defendant does not allege that his conduct in 1997 and 1998 advanced any legitimate penal interest. Instead, he contends that any interference with plaintiff's ability to observe Sukkot in 1998 was accidental and that plaintiff did not request a Sukka in 1997. While defendant may have a legitimate justification for his conduct and these explanations may provide valid defenses on summary judgment or at trial, such inquiries go beyond the question presented by defendant's motion, which is whether plaintiff has sufficiently alleged a violation of a constitutional right for purposes of determining the applicability of qualified immunity. Defendant's arguments, while perfectly legitimate in other contexts, fail to establish any defects in plaintiff's complaint.

● **Was the Right Clearly Established at the Time of the Alleged Misconduct?**

The next relevant inquiry is whether plaintiff's right was clearly established in 1997 and 1998. The constitutional right in question, however, can be characterized as narrowly as Mr. Wares' right to dine in a ceremonial booth for Sukkot or as broadly as his right to First Amendment protections. Thus, the court must first characterize the scope of the constitutional right in question. The Tenth Circuit has explained the importance of carefully constructing this inquiry:

The Supreme Court has warned that in determining whether the law was clearly established, a court should be careful not to test the rule of law at such a level of generality as to render unavailable the defense of qualified immunity. Too general a formulation would convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties, by making it impossible for officials reasonably [to] anticipate when their conduct may give rise to liability for damages. Conversely, structuring the inquiry too narrowly would render the defense available to all public officials except in those rare cases in which a precedential case existed which was 'on all fours' factually with the case at bar. Thus, in phrasing the inquiry, courts must be careful to reach the proper level of concreteness without overly limiting the factual context.

▇ *Melton v. City of Oklahoma City,* 879 F.2d 706, 729 n. 37 (10th Cir.1989), *modified in part on other grounds on reh'g,* 928 F.2d 920 (10th Cir.1991) (en banc). In similar contexts, the Tenth Circuit has refused to narrowly limit the "clearly established" inquiry to the specific religious freedoms asserted in the complaint. In *Makin,* for example, plaintiff alleged that prison officials violated his First Amendment right to freely exercise his religion by refusing to provide his meals before sunrise and after sunset, during the Muslim holy month of Ramadan. 183 F.3d at 1208–09. In examining the issue of qualified immunity, defendants argued that the proper inquiry was whether plaintiff's right to special feeding accommodations for Ramadan was clearly established at the time of the alleged violation. *Id.* at 1210 n. 4. The Tenth Circuit noted that defendant's inquiry was much too narrow and instead found the proper inquiry to be whether the right to a reasonable opportunity to exercise one's religion was clearly established at the time of the al-

leged conduct. *Id.* The court adopts the same constitutional inquiry in this case because the factual and constitutional issues are nearly identical to those in *Makin.* In both cases, the prisoner asserted a violation of the free exercise clause after the prison failed to make meal/dining accommodations that would comport with the prisoner's religious beliefs. Thus, the relevant inquiry, as in *Makin,* is whether Mr. Wares had a clearly established right to *reasonably* exercise his religion at the time of the alleged misconduct.[3]

 Mr. Wares' right to such an opportunity was clearly established before Sukkot of 1997. Since at least 1991, the Tenth Circuit has recognized that "[u]nder the free exercise clause of the first amendment, an inmate must be accorded a *reasonable* opportunity to pursue his religion." *Mosier v. Maynard,* 937 F.2d 1521, 1525 (10th Cir.1991) (emphasis added). The Supreme Court articulated the factors to consider when determining whether a particular religious accommodation is reasonable, long before Sukkot of 1997. *See Turner v. Safley,* 482 U.S. 78, 89–91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). More specifically, the Tenth Circuit has held, long before Sukkot of 1997, that the constitution requires prison officials to reasonably accommodate a prisoner's dietary restrictions based upon his or her religion.

*LaFevers v. Saffle,* 936 F.2d 1117, 1119 (10th Cir.1991). In light of these decisions and the fact that defendant did not assert any legitimate penal interest in defense of his conduct, plaintiff's right was clearly established in 1997. Accordingly, defendant's motion to dismiss plaintiff's claim for damages based upon qualified immunity is denied. In short, Mr. Wares' complaint states a violation of a constitutional right that was clearly established at the time of the alleged conduct.

● **Failure to State a Claim for Relief under 42 U.S.C. § 1983**

 Defendant moves to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiff's complaint fails to state a claim for relief under 42 U.S.C. § 1983. Section 1983 requires Mr. Wares to establish "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia." *Summum v. City of Ogden,* 297 F.3d 995, 1000 (10th Cir.2002).

 As noted in the previous section, Mr. Wares has alleged a violation of his right to freely exercise his religion, which

---

3. In *Makin,* the court refused to consider defendants' qualified immunity argument after finding that they had waived the defense. 183 F.3d at 1210. The court noted, however, that even if it were to consider the argument it would have rejected the qualified immunity defense for the reasons explained above. *Id.* at 1210 n. 4. While the reasoning in *Makin* is technically dicta, the court believes it accurately gauges the Tenth Circuit's opinion on the issue. Moreover, the court finds the reasoning to be persuasive and consistent with other Tenth Circuit precedent that cautions the court from structuring the inquiry too narrowly. *Melton,* 879 F.2d at 729 n. 37. Even if the court is incorrect and the "clearly established inquiry" should be constructed more narrowly, the Tenth Circuit, as discussed in the following section, had clearly established that prisoners are entitled to reasonable dining accommodations to exercise their religion long before Sukkot of 1997. Additionally, the United States Supreme Court had clearly established that prison officials must demonstrate, at a minimum, a rational basis for abridging the inmates' religious rights. *E.g., Williams v. Lane,* 851 F.2d 867, 882–883 (7th Cir.1988). Defendant's failure to assert a rational basis for denying Mr. Wares his rights severely undercuts the qualified immunity defense.

is protected under the First Amendment. The complaint clearly alleges that the constitutional deprivation was caused by Chaplain VanBebber, who was acting under color of state law as an officer of the State of Kansas. Defendant contends, however, that "it is clearly apparent from the information contained in the *Martinez* report, that Defendant's denial of the Sukkot tent was done on a misunderstanding, and not as a malicious denial of a well known religious right." Defendant's argument is not grounded upon the sufficiency of plaintiff's allegations, but instead, relies upon facts that fall outside the scope of the court's legitimate inquiry on a motion to dismiss. As such, plaintiff's motion to dismiss for failure to state a claim upon which relief may be granted is denied.

IT IS THEREFORE ORDERED that defendant's motion to dismiss (Doc. 45) is granted in part and denied in part. Specifically, defendant's motion to dismiss plaintiff's claims for damages in defendant's official capacity is granted. Defendant's motion to dismiss plaintiff's claims for damages in defendant's personal capacity and for failure to state a claim for relief is denied.