**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 12 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

AKEEM ABDUL MAKIN,

      Plaintiff-Appellee,

v.

COLORADO DEPARTMENT OF
CORRECTIONS, COLORADO
STATE PENITENTIARY, FRANK O.
GUNTER, ARISTEDES ZAVARAS,
DONICE NEAL, and JERRY GASKO,

      Defendants,

   and

GEORGE E. SULLIVAN and
H.B. JOHNSON,

      Defendants-Appellants.

No. 98-1272

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 93-D-479)**

---

Submitted on the briefs:

Vincent C. Todd, Lakewood, Colorado, for Plaintiff-Appellee.

Ken Salazar, Attorney General, Grace A. Belsches, Special Assistant Attorney
General, Denver, Colorado, for Defendants-Appellants.

Before **PORFILIO** , **McKAY** , and **LUCERO** , Circuit Judges.

**PORFILIO** , Circuit Judge.

Defendants George E. Sullivan and H.B. Johnson appeal from the district court's judgment following trial to the court in favor of plaintiff Akeem Abdul Makin on his 42 U.S.C. § 1983 claim for violation of his First Amendment right to exercise his religion while incarcerated in the Colorado prison system. We agree with the district court that defendants violated Mr. Makin's rights, but conclude that the court improperly determined the amount of damages awarded to him. We therefore affirm the judgment on liability, but vacate the damages award and remand for further proceedings. [1]

**I**

In 1993 and 1994, Mr. Makin was incarcerated under the jurisdiction of the Colorado Department of Corrections, confined in 1993 at the Colorado Territorial Correctional Facility and in 1994 at the Colorado State Penitentiary. He is a follower of Islam, and in both years wanted to observe the Muslim holy month of

---

[1]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Ramadan. Critical to the observance of Ramadan is the requirement that Muslims fast between dawn and sunset each day. Mr. Makin contended that defendants improperly interfered with his ability to fast during Ramadan in 1993 and 1994, and brought this § 1983 action alleging that by doing so, they violated his First Amendment right to the free exercise of his religion. Prior to trial, the district court dismissed all defendants except Messrs. Sullivan, Johnson and Gasko. In 1993, Mr. Sullivan was the deputy director of operations for the Department of Corrections, and Mr. Johnson was the superintendent of the Colorado Territorial Correctional Facility and Mr. Sullivan's subordinate. Mr. Gasko replaced Mr. Sullivan as deputy director in 1994. Following a trial to the court, the court held that Mr. Makin's rights had been violated in 1993 but not in 1994, and it found Messrs. Sullivan and Johnson liable for the 1993 violation. Because Mr. Makin does not cross-appeal the district court's conclusion there was no violation in 1994, we focus only on activities relating to Ramadan in 1993.

As part of the settlement agreement resolving a lawsuit alleging that the Department of Corrections was inattentive to the needs of its Muslim inmates, the Department hired Imam Mohammed Kharrubi to advise it on Islamic practices. In this position, Imam Kharrubi worked with food service and security personnel to arrange for provision of timely and nutritional meals to Muslim inmates participating in Ramadan--that is, meals provided between sunset and dawn that

were nutritionally equivalent to the three meals provided each day at the regular times.  Department policy with respect to Ramadan stated that "'[i]nmates participating in the fast of Ramadan shall be given the opportunity to receive at least two hot meals during the time period between sunset and dawn for each . . . day of the fast.'"  Appellants' App. Vol. II at 247 (quoting exhibit 32). [2]  A February 19, 1993 memo to the kitchen staff at the Territorial Correctional Facility explained meal procedures to be generally followed during Ramadan that year:

> "The observance of the Islamic month of Ramadan is scheduled this year from February 23rd through March 24, 1993. Muslims must fast from . . . two hours prior to sunrise until after sunset during the entire month.  Those inmates participating will be escorted by security to the north dining hall for breakfast at 4 a.m.  Supper is scheduled for 6:30 p.m. also in the north dining hall."

*Id.* Vol. I at 33 (quoting exhibit A7).  By memorandum dated February 1, 1993, Mr. Sullivan directed that the general meal procedures would not apply to inmates in segregation.  The memo stated that "[d]uring the month of Ramadan inmates in segregation will be unable to participate in special feeding activities.  Regular meals with alternative meatless entrees will be made available through the usual meal delivery system."  *Id.* at 34.  Mr. Johnson implemented the directive at the

---

[2]     None of the parties submitted copies of the trial exhibits to this court with the record on appeal.  To the extent we can refer to them at all, we rely on quotations and references contained in the trial transcript or district court orders.

Territorial Correctional Facility. Prisoners in segregation ate their meals in their cells, and the "usual meal delivery system" made meals available to prisoners in segregation only during the period after dawn and prior to sunset.

During Ramadan in 1993, Mr. Makin was housed in punitive segregation for possession of dangerous contraband. To maintain his fast, he was unable to eat his meals when delivered. He was able to keep his meal trays in his cell until after sundown and eat what he could then. That included his supper and food such as dry cereal and crackers that he saved from lunch and breakfast;[3] he also could keep cereal and crackers in his cell overnight to eat before dawn. Mr. Makin was able to maintain his fast for the entire month, although he contended that it was extremely difficult to do that and that, as a result, he was unable to enjoy the full spiritual experience of Ramadan.

Applying the standards relevant to the alleged denial of a prisoner's fundamental constitutional rights, *see Turner v. Safley*, 482 U.S. 78, 89-90 (1987), *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-50 (1987), the district court concluded that defendants Sullivan and Johnson had violated Mr. Makin's First Amendment right to the free exercise of his religion. It computed damages for denial of this right on a per diem basis of $300 or $9,000 for the entire month

---

[3] Mr. Makin testified that the temperature in the segregated cells was very high, 75 to 80 degrees, and he could not save other food items from breakfast or lunch because they would spoil. There was no contradictory testimony.

of Ramadan, assessed jointly and severally against defendants.  On appeal, defendants challenge the district court's ruling on three grounds:  (1) the court erred in rejecting their defense of qualified immunity; (2) the denial of special meal accommodations during Ramadan did not violate Mr. Makin's First Amendment rights; and (3) the court's determination of damages was incorrect.

## II

Even though they are incarcerated, prisoners retain fundamental constitutional rights.  *See Turner*, 482 U.S. at 84.  These rights include the reasonable opportunity to pursue one's religion as guaranteed by the free exercise clause of the First Amendment.  *See Shabazz*, 482 U.S. at 348; *Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir. 1991).  However, because of the inherent difficulties and concerns in running a prison, "what constitutes a reasonable opportunity must be evaluated with reference to legitimate penological objectives of the prison."  *Id.*  Thus, the standard for reviewing the validity of a prison regulation or policy affecting a prisoner's fundamental constitutional right, such as the free exercise of his or her religion, is this: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Turner*, 482 U.S. at 89.  This reasonableness inquiry considers several factors:  (1) whether there exists a rational connection between the prison policy or regulation and a legitimate

governmental interest advanced as its justification; (2) whether there are alternative means of exercising the right notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether there are ready, easy-to-implement alternatives that would accommodate the prisoner's rights. *See id.* at 89-91; *Mosier* , 937 F.2d at 1525. Like the district court, we assess the parties' contentions within this framework.

## A.  Qualified Immunity

As a preliminary matter, defendants contend that the district court erred in denying their claim that they were qualifiedly immune from liability for any improper infringement on Mr. Makin's right to freely exercise his religion. "The doctrine of qualified immunity provides that '[w]hen government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mitchell v. Maynard* , 80 F.3d 1433, 1447 (10th Cir. 1996) (quoting *Pueblo Neighborhood Health Centers, Inc. v. Losavio* , 847 F.2d  642, 645 (10th Cir.1988) (further quotation omitted)). Defendants contend they are entitled to qualified immunity because at the time of the relevant events, there was no clearly established law, that is, Supreme Court or Tenth Circuit authority, "which sets forth the parameters of special feeding

accommodation for the celebration of Ramadan in the prison setting especially for those inmates whose own voluntary behavior landed them in segregation." Appellants' Br. at 15.

Defendants first raised this issue in a motion for summary judgment that was referred to a magistrate judge. The magistrate judge issued a report recommending that the motion be denied:

> The current record does not support the defendants' claim of qualified immunity. Mr. Makin's right to reasonable access to his religiously required diet was clearly established at the time of the violations alleged in his complaint. The defendants' motion for summary judgment does not address the question of whether the restrictions placed on Mr. Makin's religious diet were reasonable under the *Turner* standard. Therefore, summary judgment cannot be granted on that basis.

Appellants' App. Vol. I at 11. Defendants did not object to the recommendation, and the district court accepted it. *See id.* at 16. Defendants re-raised the issue of qualified immunity at trial. Noting that defendants had not objected to the magistrate judge's recommendation and that the court had earlier adopted it, the court determined that the recommendation stood as law of the case and would not reconsider it.

Defendants contend that the district court erred in ruling that the qualified immunity determination was law of the case not subject to further consideration at the time of trial. Without citing authority, they contend that the failure to file written objections to a magistrate judge's recommendation based on an erroneous

determination of the law, as opposed to an erroneous determination of fact, does not bar subsequent review by either the district court or, anticipating a potential waiver problem on appeal, this court. They contend the error of law was the "Magistrate's ruling the law was clearly established requiring prison officials to provide special feeding accommodation for the Ramadan fast on the grounds that religious diet must be accommodated." Appellants' Br. at 12.

Regardless of whether defendants' failure to object to the magistrate judge's recommendation made the court's adoption of that recommendation law of the case in a technical sense, their failure to object precludes our consideration of their qualified immunity argument on appeal. The magistrate judge's recommendation effectively involved two legal determinations--that the relevant legal issue was Mr. Makin's "right to reasonable access to his religiously required diet" and that that right was clearly established at the time of the violations alleged in his complaint. *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir.1995). But contrary to defendants' unsupported contention, the failure to object to a magistrate judge's recommendation "waives appellate review of both factual *and legal* questions," *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991) (emphasis added), absent other considerations not applicable here. The fact that the magistrate judge's recommendation also concluded there were unresolved factual issues precluding summary judgment does not detract from its legal

determinations nor relieve defendants of their obligation to object to those determinations to preserve their right to appellate review. We therefore will not consider defendants' qualified immunity argument. [4]

## B. Violation of First Amendment Rights

Defendants next challenge the district court's determination that the denial of special meal accommodations during Ramadan violated Mr. Makin's First Amendment rights. Their argument takes two tracks. First, they argue that there was no violation because Mr. Makin was able to fast for the entire month of Ramadan despite their failure to deliver his meals at times when he could eat. Second, they contend that any infringement on his rights was justified by legitimate penological interests in deterrence of improper conduct, rehabilitation, prison security, and budgetary considerations. We review the district court's

---

[4] Moreover, even were we to consider this argument on the merits, we would find it unpersuasive. They frame the inquiry into the right that must be clearly established--"the parameters of special feeding accommodation for the celebration of Ramadan"--much too narrowly. *See LaBounty v. Coughlin*, 137 F.3d 68, 73-74 (2d Cir. 1998); *Melton v. City of Okla. City*, 879 F.2d 706, 729 n.37 (10th Cir. 1989) ("[S]tructuring the inquiry [into what right must be clearly established] too narrowly would render the defense [of qualified immunity] available to all public officials except in those rare cases in which a precedential case existed which was 'on all fours' factually with the case at bar.") (quotation omitted), *modified in part on other grounds on reh'g*, 928 F.2d 920 (10th Cir. 1991) (en banc). The general right to the reasonable opportunity to exercise one's religion, clearly established, e.g., by *Turner, Shabazz*, and *Mosier*, best encompasses the alleged conduct. *Cf. LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991) (recognizing constitutional protection for dietary restrictions based on religious beliefs).

factual findings underlying its reasonableness determination for clear error, *see, e.g.*, *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996), but our review of the ultimate reasonableness inquiry is de novo, *see Mosier*, 937 F.2d at 1525.

Before addressing defendants' specific arguments, we must note the limited breadth of the issue presented for review. That issue, *as defined by defendants*, is whether they improperly infringed on Mr. Makin's right to exercise his right to observe Ramadan in 1993. It is not the broader issue of whether their actions improperly infringed on his right to exercise his belief in Islam in a more general sense, as was the case, for example, in *Shabazz*. *See* 482 U.S. at 352. [5] By limiting our focus to the observance of Ramadan, however, we do not mean to diminish the significance of Ramadan as part of the Five Pillars of Islam. *See, e.g.*, Appellants' App. Vol. II at 20-21, 30, 63.

_____

[5]     In *Shabazz*, Muslim prisoners challenged regulations restricting their ability to attend a congregational service called Jumu'ah. In its analysis, the Court said "we think it appropriate to see whether under these regulations [the prisoners] retain the ability to participate in other Muslim religious ceremonies," including Ramadan. 482 U.S. at 352. After noting the prisoners did retain that ability, the Court concluded that "this ability on the part of [the prisoners] to participate in other religious observances of their faith supports the conclusion that the restrictions at issue here were reasonable." *Id.* We note that the record on appeal in this case says little about any other Islamic observances or practices in which Mr. Makin was able to participate.

-11-

The district court rejected defendants' argument that the fact that Mr. Makin was able to fast the entire month of Ramadan absolved them of any liability their restrictions on meal service may have warranted:

> Although Mr. Makin was able to engage in the fast through personal sacrifice by the act of simply not eating his breakfast or lunch and trying to save food from his dinner tray to eat after sundown, it is clear to this Court that the qualitative spiritual experience that was eloquently described by Mr. Makin, and which was corroborated by the testimony of the Islamic coordinator, was substantially diminished by the regulations in place.

Appellants' App. Vol. I at 39-40. Although defendants' argument could be viewed as relating to the *Turner* factor regarding alternative means of exercising the right, their argument appears to go to the more fundamental proposition that Mr. Makin's rights were not infringed at all. As did the district court, we address the argument in that posture.

At trial, Imam Kharrubi explained the religious experience of Ramadan as follows:

> The month of Ramadan is a special season. Muslims believe that during that month there are more angels around. Rewards are multiplied, and sins are multiplied as well. So we--we are highly encouraged by these perceptions, of course, by the practice within our community to avoid all kinds of sins, gossip, backbiting, and all the other bad things. And, of course, maximize our good behavior and good practices.
>
> And it's basically a special season to maximize spirituality, getting closer to God. Blessings is much easier to receive in Ramadan than otherwise.

. . . .

. . . Islam emphasizes discipline, and it's through discipline and through adherence to these practices that you would grow spiritually. This growth that's gained through the practice itself is . . . something similar to the word zakat, which is charity, the third pillar of Islam. And basically, when you give in charity, you gain purification of your soul. When you practice--when you pray, when you fast, when you do all the other good deeds that you're required to do, that's when you get spiritual growth and purification.

If . . . somebody practices fasting, they would get a blessing from God. And through the practice of that self-discipline, they would get purification as well.

If a person was not allowed to fast or if a person was not in the position, was not able to fast, then with still through their intention wanted to fast but could not, would get a blessing from God, but would miss out on the purification or the growth that would be received through the actual practice itself.

Appellants' App. Vol. II at 64-66. Mr. Makin further explained the beneficial experience of Ramadan, and the negative effect of defendants' restrictions on meal service and his opposition to those restrictions, as follow:

That I would ordinarily attain [during Ramadan] would be a state of peace of mind, a state of knowing and feeling that everybody throughout the year that has not had food, they are also feeling the pains that I'm also feeling. And it is our way of getting in touch with the inner forces within us.

. . . .

. . .Within the month of Ramadan, that I supposed to be within a peaceful state of mind. I do not supposed to engage in war, arguments or nothing like that. When I'm placed within a position to where I'm now must engage within this [complaints to prison

-13-

authorities regarding meal accommodations], all right, that my nice, peaceful aura is now broken. . . .

. . . .

[as to physical deprivation] It was horrible. It's standing around sweating, being in bed sweating, It's--during Ramadan you're going to encounter, you know, the urge to eat. You're going to feel hungry. Compound that on with having extremely hot [he testified the cells were very hot], and you're also engaged within this close confinement and also engaged in combativeness to trying to get it so that you can at least eat right.

*Id.* at 30-32.

As noted above, the district court relied on this testimony in finding an infringement on Mr. Makin's right to freely exercise his religion because defendants actions substantially diminished his qualitative spiritual experience. Defendants essentially argue that the burden they placed on Mr. Makin's ability to fast during Ramadan should be ignored because he overcame that burden and did fast. We reject this argument for several reasons. First, it is founded on the unacceptable notion that prison authorities may burden the observance of religious practices for no legitimate reason at all. Second, it makes the question of the legitimacy of government action dependent on the personal strength of the individual affected.

Third, and what the district court found most important, it ignores the religious experiential aspects of Ramadan beyond the fasting itself. There is no question, as the district court found based on undisputed evidence, that Mr. Makin

-14-

sincerely holds his religious beliefs. *See generally Mosier*, 937 F.2d at 1526-27 (discussing requirement that religious beliefs be sincerely held to be protected). Should defendants be implicitly inviting us to question the validity or importance of these other aspects of Ramadan as described by Mr. Makin (and Imam Kharrubi), we heartily reject their invitation. *See, e.g.*, *Employment Division v. Smith*, 494 U.S. 872, 887 (1990) ("Repeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim."); *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989) ("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds."); *United States v. Seeger*, 380 U.S. 163, 184-85 (1965) ("Religious experiences which are as real as life to some may be incomprehensible to others. . . . [A court's] task is to decide whether the beliefs professed by [an individual] are sincerely held and whether they are, in his own scheme of things, religious.") (quotation omitted).

As the testimony by Imam Kharrubi and Mr. Makin demonstrated, and the district court held, the burden defendants placed on Mr. Makin diminished the spiritual experience he otherwise could gain through Ramadan. This is sufficient to constitute an infringement on his right to freely exercise his religion. A complete denial of the ability to observe a religious practice is not required to

-15-

demonstrate an infringement, though the fact that a spiritual experience was only diminished rather than denied may factor into the strength of the penological interests necessary to justify the infringement. We thus turn to defendants' argument that legitimate penological interests warranted their interference with Mr. Makin's rights.

Defendants contend that the Ramadan policy for inmates in segregation served four governmental interests: deterrence, rehabilitation, security and budget. Defendants argue generally that restricting a prisoner's right to exercise his religion while in punitive segregation "deter[s] inmates from behaving in a manner which caused them to be placed in segregation." Appellants' Br. at 7. However, they cite neither evidence indicating that the policy had any deterrent or rehabilitative goal, nor authority supporting their implied contention that restriction of religious freedom is a proper tool for deterring improper conduct. *Cf. Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989) ("It also was error to assume that prison officials were justified in limiting appellant's free exercise rights simply because [he] was in disciplinary confinement."). Moreover, defendants ignore Mr. Sullivan's testimony that deterrence and rehabilitation were not considerations in promulgating the policy. As he explained:

> The intent [of the policy] would not have been rehabilitation or deterrence. The intent would have been to simply meet the operational security needs of the prison with the limited staff we had available. We just simply didn't have the staff available and the

resources available to accommodate the program for those inmates in segregation.

There was no processing of goals and objectives of corrections in terms of, is this rehabilitative or a deterrence effect?  That was not in the process.  The process was very limited to the availability of staff necessary to carry out the program.

Appellants' App. Vol. II at 91.

Mr. Sullivan's testimony does support the general idea that the policy served the related interests of security and budgetary considerations, but he did not further elaborate on these interests, and the record does not contain other evidence of their relevance or applicability.  Based on Mr. Johnson's testimony that the security and budgetary impact of accommodating Mr. Makin in segregation would have been minimal, the district court found the security and budgetary interests to be nonexistent. [6]  Defendants contend that the district court

---

[6]     The court based its finding primarily on its questioning of  Mr. Johnson on this point as follows:

THE COURT:  . . . Let's assume that instead of being told that inmates in segregation would be unable to participate in special feeding activities, you were told they would be allowed to participate in special feeding activities, how would you have accommodated that directive?

THE WITNESS:  I would have realigned the staff.  I would have made special provisions, as I did for Ramadan itself.

THE COURT:  So could you have accommodated that request so that inmates--

(continued...)

improperly dismissed budgetary concerns because the directive applied to all

prisons and prisoners within the Department of Corrections system, not just

---

[6](...continued)

THE WITNESS: Could I have accommodated it? Absolutely.

THE COURT: Okay. How would you have done that?

THE WITNESS: I would have probably brought in overtime staff, and I would have taken--when we brought the inmates over to the general mess hall, then I would have had staff pick up the food from the general mess hall and deliver it to the administrative segregation.

THE COURT: Okay. You're talking about the inmates who were taken at 4 a.m. for breakfast in the . . . general population, and you would have taken a food tray back to the inmates in segregation.

THE WITNESS: Yes. And I would have taken it within the time frames the same as we ran our other program.

THE COURT: Okay. And then in the evening, because the policy specified that those who were in the general population would have their dinner meal at 6:30 p.m., which would have been after sundown, you would have done the same thing in the evening?

THE WITNESS: Yes, sir, I would have.

THE COURT: Okay. So really the only reason that you didn't do that for Mr. Makin was because you had gotten this directive from Mr. Sullivan which said that inmates in segregation would be unable to participate in special feeding activities. Is that what you are saying?

THE WITNESS: Yes, sir.

Appellants' App. Vol. II at 183-84.

-18-

Territorial and Mr. Makin. However, as noted above, they presented no evidence of the budgetary or security impact of accommodating prisoners in segregation at these other facilities. Given the evidence before the district court, its finding that there were no legitimate budgetary and security interests behind the policy is not clearly erroneous.

We thus agree with the district court that the directive infringed on Mr. Makin's right to exercise his religion and that defendants did not put forth any legitimate penological interests to justify that infringement. Defendants therefore denied Mr. Makin a reasonable opportunity to pursue his religion, and are liable for damages under § 1983.

## C. Damages

Defendants contend that should we agree with the district court that they violated Mr. Makin's constitutional rights, we should vacate the district court's compensatory damages award of $9,000 because Mr. Makin did not suffer any actual injury. They contend that only an award of $1 in nominal damages is appropriate. While we agree the district court improperly determined the amount of damages, we do not agree that Mr. Makin is entitled only to nominal damages.

Damages are available for violations of § 1983 "to compensate persons for injuries caused by the deprivation of constitutional rights." *Carey v. Piphus*, 435 U.S. 247, 254 (1978). A damages award must be based on actual injuries; *id.* at

264; "the abstract value of a constitutional right may not form the basis for § 1983 damages." *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986).

The district court concluded that "[t]he best way that the Court can quantify a damage figure is on a per diem basis, *i.e.*, that a certain amount per day be awarded which represents what this Court believes to be a reasonable damage award to this Plaintiff who was *unconstitutionally denied his ability to freely exercise his religion* for the month of Ramadan in 1993." Appellants' App. Vol. I at 42-43 (emphasis added). In doing so, the court incorrectly based its award on the abstract value of the constitutional right rather than on the actual injuries Mr. Makin suffered from the denial of that right, and we must vacate its award. We disagree with defendants, however, that there was no evidence of actual damages and that we must therefore impose nominal damages of only $1. Mr. Makin's testimony provides some evidence that he suffered mental or emotional distress as a result of defendants' actions for which he may recover. *See Carey*, 435 U.S. at 264. We leave for the district court's determination on remand the amount of damages, if any, the evidence supports.

### III

In sum, we conclude that the district court correctly held that defendants' failure to accommodate Mr. Makin's meal requirements during Ramadan in 1993

violated his First Amendment right to freely exercise his religion, but that the district court improperly determined the amount of damages. The judgment of the district court in favor of Mr. Makin is therefore AFFIRMED in part, the award of damages is VACATED, and the case is remanded to the district court for proceedings consistent with this opinion.