**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 8 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DONALD E. DERRICK,

      Plaintiff-Appellant,

v.

RON WARD, Director; LENORA
JORDAN, Warden; DONALD
COFFMAN, Deputy Warden;
OKLAHOMA DEPARTMENT OF
CORRECTIONS,

      Defendants-Appellees.

No. 03-6090
(D.C. No. CIV-02-691-M)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **BRISCOE** and **McKAY** , Circuit Judges, and **BRORBY** , Senior Circuit
Judge.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Donald E. Derrick, appearing pro se, appeals from the district court's grant of summary judgment in favor of defendants. Derrick brings this action pursuant to 42 U.S.C. § 1983 alleging that state prison officials Ron Ward, Lenora Jordan, and Donald Coffman, violated his constitutional rights. The district court found that Derrick's claims against the defendants in their official capacities were barred by the Eleventh Amendment, and that the undisputed facts demonstrated that Derrick's constitutional rights were not violated. The district court determined also that Dennis Burrell and Arthur Lightle were not proper defendants. We affirm.

I.

Derrick was an inmate at the James Crabtree Correctional Center (JCCC) when the events giving rise to this action took place. Derrick proclaims himself to be a "Kingdom Identity Christian, an[d] a member of the Church of Jesus Christ Christian of the Aryan Nations." R., Doc. 22 at 5. In early March 2002, Derrick requested a time slot in the prison chapel to hold Kingdom Identity services. The prison chaplain, Burrell, initially told Derrick that he could start using the chapel for services on March 16, 2002, but then later discovered a scheduling conflict. Burrell told his assistant, Paul Revel, to inform Derrick that his group could not start meeting at the chapel until after April 1, 2002. On March 16, 2002, Derrick and thirty-three other inmates arrived at the chapel and

were told that, due to a scheduling conflict, they could not begin using the chapel for another two weeks. Derrick and the group of inmates then went outside the chapel and began conducting their meeting. After a short time, some correctional officers ordered the group to break up because they had not been given permission for the gathering. The correctional officers confiscated the group's attendance list and other materials. Two weeks later Derrick was placed in transit detention, a form of administrative segregation. Derrick requested an explanation for his segregation and Warden Jordan responded with the following letter:

> You were placed in [transit detention] due to your involvement in an unauthorized grouping on the yard at James Crabtree Correctional Center. You did not have permission to have a religious meeting and the literature that was confiscated from the meeting indicates an Aryan format. The Aryan Brotherhood is not a recognized religious group but is a nationally recognized hate group. . . . You have been placed in the Segregated Housing Unit as your continued presence in the general populations is believed to be a threat to the security of this institution.
>
> . . . .
>
> Should you desire religious services you will need to request this from the Chaplain. Your placement in the Segregation Housing Unit is consistent with policy and in the best interest of this institution.

R., Doc. 20, Attachment G at 8.

On May 15, 2002, Derrick was transferred from JCCC to the Lawton Correctional Facility. On May 23, 2002, Derrick filed a complaint alleging that

his First, Eighth, and Fourteenth Amendment rights [1] were violated when defendants discriminated against him and persecuted him because of his religious beliefs.

## II.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, "we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (quotation omitted).

Derrick sued the correction officers in both their official and individual capacities. The district court properly found that defendants met their burden on

---

[1] In addition to his constitutional claims, Derrick alleged that the defendants violated the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb-2000bb-4. The district court properly denied this claim because in *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997), the Supreme Court held this Act unconstitutional as applied to the states.

summary judgment because: 1) the Eleventh Amendment bars Derrick's claims against defendants in their official capacities, and 2) Derrick did not establish that the defendants, in their individual capacities, violated any of his constitutional rights.

A.

First, we address Derrick's suit against defendants in their official capacities. Under the Eleventh Amendment, a state is generally immune from suit in federal court. *See Elephant Butte Irrigation Dist. of N.M. v. Dep't of the Interior*, 160 F.3d 602, 607 (10th Cir. 1998). State officials, acting in their official capacity, are considered to be acting on behalf of the state, so they also receive Eleventh Amendment immunity from suits in federal court. *See id.* There are two exceptions to this general rule: 1) if the state unmistakably waives its Eleventh Amendment immunity, or 2) if Congress unmistakably abrogates the state's immunity by statute. *See Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994). The State of Oklahoma has not waived its Eleventh Amendment immunity. *Id.* at 589; *Nichols v. Dep't of Corr.,* 631 P.2d 746, 751 (Okla. 1981); Okla. Stat. tit. 51 §152.1. Furthermore, Congress did not abrogate the sovereign immunity of the state in enacting 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Defendants, in their official

capacities, are therefore entitled to Eleventh Amendment immunity from Derrick's claims.

B.

Next, we address Derrick's claims against defendants in their individual capacities. In response to these claims, defendants raised the defense of qualified immunity. Qualified immunity protects government officials from individual liability under 42 U.S.C. § 1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The threshold question is, however: do the facts alleged show that the officer's conduct violated a constitutional right? *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Because the district court found that defendants did not violate any of Derrick's constitutional rights, it granted summary judgment in favor of defendants on the merits without completing the qualified-immunity analysis. We agree that summary judgment on the merits is appropriate. We address each of the constitutional claims separately below.

<u>First Amendment Claim</u>

Derrick claims that his First Amendment rights were violated when he was discriminated against and persecuted because of his religious beliefs. Although a prisoner retains the First Amendment right to religious freedom while

-6-

incarcerated, prison officials may place certain restrictions on the exercise of that right in order to advance "valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). "[C]ourts are not to substitute their judgment on matters of institutional administration for the determinations made by prison officials, even when First Amendment claims have been made." *Kikumura v. Hurley*, 242 F.3d 950, 956 (10th Cir. 2001).

In determining the constitutionality of restrictions on the exercise of religion, the Court must balance four factors: (1) the existence of a rational connection between the prison restriction and a legitimate governmental interest advanced as its justification; (2) the presence of alternatives for inmates to exercise the right; (3) the effect that elimination of the restriction would have on guards, other prisoners, and prison resources; and (4) the existence of alternatives for prison officials without restricting inmates' rights to religious expression. *See Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1209 (10th Cir. 1999).

Defendants have shown that there is a rational connection between placing Derrick in segregation and a legitimate governmental justification. Derrick presided over an unauthorized gathering of approximately thirty-five inmates in which correctional officers observed the inmates raising their arms to salute "like that of the German Nazi salute," and confiscated materials that included "14

Codes of the Aryan Ethic." R., Doc. 20, Attachment C at 5, 7. In response to Derrick's grievance, Defendant Jordan explained that Derrick was placed in segregation because of his involvement in the unauthorized gathering, and because the material confiscated showed an "Aryan Format," making Derrick's "continued presence in the general populations . . . a threat to the security of this institution." *Id.,* Attachment G at 8.

Despite Derrick's placement in segregation, Derrick had an alternative means to exercise his religious rights. Oklahoma Department of Corrections policy provides that "those on administrative segregation . . . will have access to programs and services which include, but are not limited to . . . [s]piritual and religious guidance provided by the chaplain or religious volunteer." R., Doc. 20, Attachment F at 8. In addition, in Defendant Jordan's response to Derrick's grievance, she advised him that he could request religious services from the chaplain while in segregation. *Id.*, Attachment G at 8.

Finally, defendants have shown that allowing Derrick to remain in the general population after he led a large number of inmates in a gathering with an Aryan format would have a detrimental effect on other prisoners, and would create a threat to prison security, which would have a detrimental effect on prison resources. Although Derrick claims that he is not a member of an Aryan gang, it is undisputed that his religion has characteristics traditionally attributed to Aryan

gang members, including the use of the swastika and the "open hand 'salute' in prayer." R., Doc. 22, Attachment titled "Standard Orders of Worship & Articles of Faith" at 9. Because Derrick failed to come forward with any evidence to refute defendants' showing that the restrictions placed on Derrick were "reasonably related to legitimate penological concerns," he cannot establish that defendants violated his First Amendment rights. *See O'Lone*, 482 U.S. at 349.

Eighth Amendment Claim

Derrick claimed that defendants violated his Eighth Amendment rights because Defendants Ward and Jordan were "deliberately indifferent to the protection of Plaintiff's Constitutional Rights of the 1st, 8th, and 14th amendment rights of [the] United States Constitution when [they were] put on notice of the violations and [they] did nothing to correct them." R., Doc. 2 at 6. Derrick alleged also that Defendant Coffman violated his Eighth Amendment rights "by not allowing him to practice his religious beliefs free from persecution by the State." *Id.* at 7. An inmate's Eighth Amendment rights may be violated if a prison official demonstrates a deliberate indifference to a substantial risk of serious harm to the inmate. *See Benefield v. McDowall*, 241 F.3d 1267, 1270-71 (10th Cir. 2001). In order to establish an Eighth Amendment violation, Derrick must show: (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and (2) "that the prison official was deliberately indifferent to

his safety." *Id.* at 1271 (quotations omitted). "Only those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1188 (10th Cir. 2003) (quotation and alteration omitted). Because Derrick failed to demonstrate that defendants denied him the minimal necessities of civilized life, summary judgment on his Eighth Amendment claim is appropriate.

Fourteenth Amendment Claim

Derrick alleges that defendants violated his right to equal protection under the Fourteenth Amendment when Defendant Coffman placed him in administrative segregation and the other defendants failed to protect Derrick from discrimination and persecution by allowing him to be placed in administrative segregation. To sustain a claim under the Equal Protection Clause, Derrick must provide evidence that he was treated differently from others who are similarly situated to him, and that the acts forming the basis of the claim were motivated by a discriminatory purpose. *See Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003). Derrick has failed to present any evidence that he was treated differently from others who are similarly situated and he has failed to show that the defendants' acts were motivated by a discriminatory purpose, rather than the defendants' stated purpose of placing Derrick in segregation to prevent a

prison security risk. Summary judgment on Derrick's Fourteenth Amendment claim is appropriate.

C.

The district court determined also that Burrell and Lightle were not proper defendants. Although it is not clear from Derrick's pro se brief whether he is challenging this ruling, we affirm the district court's determination that Burrell and Lightle were not proper defendants. Burrell and Lightle were served with the complaint, but were not named in the caption of the complaint. "[A] party not properly named in the caption of a complaint may still be properly before the court if the allegations in the body of the complaint make it plain the party is intended as a defendant." *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Lightle is nowhere mentioned in the body of the complaint. Burrell is mentioned twice, but only to explain that he is the chaplain who gave Derrick permission to meet in the chapel and that he is Derrick's religious sponsor. There are no allegations that Burrell committed any violations and there is no claim for relief against him. We affirm the district court's decision that Defendants Ward, Jordan and Coffman are the only defendants properly before the court.

Derrick's motion to pay the filing fee in partial payments is granted.

Derrick is reminded that he is obligated to continue making partial payments until

the entire fee has been paid.  The judgment of the district court is AFFIRMED.


Entered for the Court


Wade Brorby
Senior Circuit Judge