**Russell M. BOLES, Plaintiff,**

v.

**Gary D. NEET, Defendant.**

**No. CIV.03–F–557(OES).**

United States District Court,
D. Colorado.

Aug. 20, 2004.

Russell Marshall Boles, Canon City, CO, pro se.

James Xavier Quinn, Attorney General's Office, Denver, CO, for Defendant.

## ORDER ON PENDING MOTIONS

FIGA, District Judge.

This case, filed *pro se* by plaintiff Russell M. Boles, comes before the Court on Defendant Neet's Motion to Dismiss (Dkt. # 27), Plaintiff's Motion to Amend Complaint (Dkt.# 40) and Plaintiff's Motion for Summary Judgment (Dkt. # 46). These motions were referred to the Magistrate Judge for recommendation. On July 12, 2004, the Magistrate Judge entered his recommendation on these motions. By order dated July 21, 2004, the plaintiff was granted an extension of time through August 16, 2004 to file objections to the recommendation. By order dated July 27, 2004, defendant was granted an extension of time through August 6, 2004 to file objections to the recommendation. Both

the defendant and plaintiff have timely filed objections to the recommendation of the Magistrate Judge. This Court has considered the objections but finds that the well-reasoned recommendation of the Magistrate Judge should be followed.

Plaintiff, a state inmate at the Fremont Correctional Facility ("FCF"), filed his *pro se* complaint on April 1, 2003, alleging several claims for violation of his constitutional rights. After initial screening some of the claims were dismissed, but plaintiff was allowed to proceed on claim one, filed against defendant Gary Neet, the warden of FCF alleging "religious discrimination that aggravated a medical condition." The essence of this claim relates occasions, including one that apparently occurred in March 2001, when plaintiff, who alleges he is an Orthodox Jew, was not allowed to wear the religious garments he states are required to be worn by Orthodox Jews[1] while he was being transported outside FCF for medical treatment or surgery. As a result of the denial, plaintiff was not transported and the surgery was postponed for 18 months, or until December 2002, according to plaintiff's complaint.

On September 18, 2003, defendant filed his motion to dismiss. The motion to dismiss argued that defendant was entitled to sovereign immunity if he was being sued in his official capacity and qualified immunity if in his individual capacity. The motion also argued that plaintiff's claim for injunctive relief was moot and that he failed to demonstrate a physical injury so as to allow a claim for damages consistent with the limitations set forth in 42 U.S.C. § 1997(e)(e).

On November 3, 2003, plaintiff filed a motion for leave to file an amended complaint. The amended complaint contained four claims for relief against defendant Neet. The first claim alleged a due process violation; the second claim restated his religious discrimination claim to include a claim for violation of his rights under the First Amendment to the free exercise of his religious beliefs and added a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C. § 2000cc; the third claim alleged a claim for deliberate indifference to his medical needs in violation of the Eighth Amendment; and the fourth claim alleged an "additional fourteenth amendment claim" of systematic discrimination against "Jews, Native Americans . . . and occasionally other groups."

Defendant opposed the attempt to amend, arguing that plaintiff's religious discrimination claims were barred for the same reasons set forth in the motion to dismiss. Defendant also argued that amendment of the complaint should be disallowed because the due process claim was futile and the eighth amendment claim was barred by the applicable two-year statute of limitations (*see* Defendant's response to plaintiff's motion to amend, filled November 24, 2003).

On December 10, 2003, plaintiff moved for summary judgment on the issue of liability and sought to reserve his damages claims for trial.

In his recommendation of July 12, 2004, the Magistrate Judge recommended that the defendant's motion to dismiss be

---

**1.** Plaintiff claims he was denied transport because he insisted on wearing his "yarmulke" (skull cap or head covering) and "tallit katan" (undergarment bearing fringes, or "tzitzit"), worn by some of the Jewish faith to fulfill the commandment appearing in the Bible at the book of Numbers, ch. 15, verse 37 ("make for themselves '*tzitzit*' fringes on the corners of their garments throughout the ages."). Plaintiff alleges that the *Kitzer Shulchan Arukh*, (a code of Jewish Law) provides that a Jewish male is forbidden to walk four cubits with his head uncovered or not wearing "*tzitzit*" during daylight hours.

granted in part and denied in part. He recommended granting that portion of the motion that seeks to dismiss plaintiff's claim for injunctive relief as moot, since the claims that gave rise to the injunctive relief were previously dismissed, and since the regulations relating to wearing Jewish religious garb outside the prison had been specifically amended to permit the wearing of "yarmulke" (skullcaps) and "tallit katan" (worn under the clothing) during transport outside the prison. He also recommended dismissal of the claims that may have been brought against defendant Neet in his official capacity, as such claims for damages are barred by the Eleventh Amendment, and the claims for injunctive relief have been dismissed or were mooted.

 In response to the recommendation of the Magistrate Judge, plaintiff's objection appears to argue that the claim for injunctive relief is not moot. In support of this argument, plaintiff has conveniently attached the regulations that apply. The Court notes that the latest of these regulations, bearing an effective date of November 15, 2001, expressly states that Jewish inmates "shall be allowed to wear the 'Yarmulke' (skull cap) and the 'Tallit Katan' (worn under the clothing), while being transported." Thus it appears that the Magistrate Judge correctly determined that the injunctive relief sought is no longer required, and therefore he correctly dismissed all claims brought against defendant Neet in his official capacity.

The Magistrate Judge also found that the operative complaint in the case would be the amended complaint filed by plaintiff, so long as the claims in the amended complaint cured any deficiencies of the original complaint, and the newly asserted claims would not be futile.

In reviewing the motion to dismiss as it applied to the four claims in the amended complaint, the Magistrate Judge rejected the argument that the two-year statute of limitations barred any claims, but he recommended dismissal of the first, third and fourth claims for relief, on the grounds that plaintiff's claims failed to state claims for relief under Rule 12(b)(6). This Court agrees with the recommendation.

With respect to the first claim for relief, the Magistrate Judge recommended that this Court deny dismissal on the grounds that the claim failed to state a claim for relief, and on the grounds of qualified immunity. The Magistrate Judge found that the plaintiff had stated claims under the First Amendment and under the RLUIPA arising out of the refusal to transport him for medical treatment while wearing his religious garments. Taking the allegations in the amended complaint as true, as the Court must do on a motion to dismiss, the Magistrate Judge found, and this Court agrees, that the first claim for relief in the amended complaint states a proper cause of action.

 The Magistrate Judge further found that qualified Immunity did not protect defendant Neet at this stage of the case. Applying the two-part inquiry test articulated in *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Magistrate Judge stated that the plaintiff's claims both described potential violations of constitutional rights, and the rights were clearly established at the time of the alleged events.

In reaching this recommendation the Magistrate Judge relied on Tenth Circuit case law holding that a plaintiff sufficiently states a constitutional violation by alleging that prison officials placed an unreasonable burden upon him that diminished his religious practice, citing to *Makin v. Colo. Dept. of Corrections,* 183 F.3d 1205, 1213 (10th Cir.1999). He further found that the second inquiry of the test for qualified immunity would be framed in this case as "whether the right to a reasonable oppor-

tunity to exercise one's religion was clearly established at the time of the alleged conduct." (Magistrate Judge' recommendation, at 11 referring to *Makin, supra,* 183 F.3d at 1210, n. 4).

In his objection to this Court, defendant states that the Magistrate Judge described too broadly the second prong of the test. The defendant appears to argue that the right that had to be "clearly established" was the specific right in the particular situation to wear religious garb outside the prison while being transported, and there was no case law to establish this specific right at the time plaintiff was denied transport because he was wearing religious garb. Defendant made a similar argument in its Motion to Dismiss. The Magistrate Judge rejected defendant's formulation of the second prong of the test as too narrow. This Court agrees with the Magistrate Judge on this point and therefore overrules defendant's objection.

. [3] While a defendant charged with a constitutional violation receives qualified immunity when the right asserted is not clearly established, the right that has been established does not have to be so fact specific that it is identical to what is alleged in the case at issue, as defendant appears to argue here. To overcome a motion to dismiss the plaintiff must articulate a constitutional right which the defendant violated. To unreasonably limit plaintiff's free exercise of religion is a violation. The limitation of that right does not have to completely prevent a plaintiff from exercising his religious rights. As the Tenth Circuit stated in *Makin, supra,* "[a] complete denial of the ability to observe a religious practice is not required to demonstrate an infringement" of a prisoner's right to free exercise. 183 F.3d at 1213.

▪ The question remains whether the evidence shows that what defendant did in this case, in light of all the circumstances, was or was not a reasonable restriction on plaintiff's religious rights, given the needs of prison security. In support of his position that his determination to not transport the plaintiff while wearing his yarmulke and "tallit katan" was reasonable, defendant argues to this Court that relevant prison regulations permitted this restriction. A memorandum from defendant to plaintiff, dated April 30, 2001, apparently sent in response to the incident described in the lawsuit, states that transportation of inmates is "defined in AR 300–37 RD." However, the defendant apparently has not assisted the Court by providing a copy of the regulation he claims to have relied upon, and this Court is unable to determine from the record what the referenced policy provided as of March 2001. Defendant's April 30, 2001 memorandum states that the policy, in general, indicated that "offenders will be restrained and dressed in orange jumpsuit and transport shoes." Even assuming this is an accurate representation of the policy, nothing in the policy prohibits the inmate from also wearing a head covering or undergarment during transportation.

On the other hand, plaintiff has provided the regulations he submits were in effect. The Court notes that the memorandum dated March 1, 2001, signed by Lee Hendrix and containing the notation "Please Issue to All Staff," which apparently summarizes the applicable regulations at that date, states protocols with respect to both head coverings and "tallit katan." That memorandum states that head covering may be worn in the cell or at service only, while a standard prison ball cap may be worn in the general population; yet it also states: "Under garment with fringes. May be worn at all times." (Memorandum, p. 2). This could indicate that even during transport outside the prison, at least a standard ball cap (in place of the yarmulke) and specifically the "tallit ka-

tan," may be worn. Moreover, as noted above, by November 15, 2001 the published regulation explicitly permitted the wearing of these items during transport.

Accordingly, at this stage of the case, this Court cannot say as a matter of law that Defendant Neet's determination to prohibit the wearing of such items during transport was a reasonable restriction on plaintiff's free exercise of his religious practices, consistent with prison security needs, such that defendant is entitled to be clothed with qualified immunity. The recommendation of the Magistrate Judge on this point must be accepted.

The Magistrate Judge also recommended that plaintiff's claim under the RLUIPA should be permitted to go forward as plaintiff stated a claim under the statute, and the right to assert such a claim was clearly established at the time of plaintiff's alleged injury. The Magistrate Judge therefore denied defendant's assertion of qualified immunity as to this claim. For the reasons set forth above, this court also finds that defendant's objection to this recommendation of the Magistrate Judge be rejected.

Defendant also urges this Court to overrule the Magistrate Judge's recommendation regarding the application of the two-year statute of limitations. This Court declines to do so. Plaintiff's complaint does not expressly state when the incident(s) regarding denial of transportation occurred. Defendant asserts it occurred on March 5, 2001, and since plaintiff did not file his complaint in this case until March 11, 2003 at the earliest, he filed outside the two-year limitations period. (It appears that plaintiff mailed his complaint on March 11, 2001 and it was received by the Clerk on March 14, 2001, but was not accepted for filing until April 1, 2001.)

 Defendant is correct that the Colorado two-year statute of limitations, C.R.S.

§ 13–80–102, is applicable to this case. As the Magistrate Judge correctly stated, when that statute begins to run is a matter of federal law. A civil rights violation accrues when the plaintiff knows, or has reason to know, of the injury which is the basis for the action. *See, e.g., Smith v. City of Enid,* 149 F.3d 1151, 1154 (10th Cir.1998).

 Here, plaintiff has alleged not only that his rights were violated in March 2001, but also over a period of time of some eighteen months when he was being denied transport while insisting that he be permitted to wear his religious garb. At a minimum, the documentary evidence of record shows that as of April 30, 2001, defendant was still engaging plaintiff in an exchange over whether his right to be transported wearing his religious garb would be recognized. While the record is not clear, plaintiff may well have refused, or been denied, medical treatment so long as he insisted upon wearing religious items he was not allowed to wear en route. The period during which this impasse occurred may well have spilled over into the applicable two year period. Accordingly, this Court cannot say as a matter of law that plaintiff's constitutional cause of action accrued earlier than two years before that date on which plaintiff filed his civil rights complaint.

## CONCLUSION

Plaintiff's Motion to Amend his complaint (Dkt. # 40) is GRANTED and plaintiff's amended complaint is deemed filed as of November 3, 2003;

Defendant's Motion to Dismiss (Dkt. # 27) is GRANTED in part and DENIED in part; and plaintiff's first, third and fourth claims in his amended complaint are dismissed; plaintiff's second claim in his amended complaint may proceed on his claims under the First Amendment and

under RLUIPA; plaintiff's claim for recovery of damages is limited to nominal damages and punitive damages in accordance with the provisions of 42 U.S.C. § 1997(e)(e);

Plaintiff's Motion for Summary Judgment (Dkt. # 46) is DENIED.