**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 21, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHARLES LAMONT WILLIAMS,

    Plaintiff - Appellee,

v.

JENNIFER HANSEN; DAVID
LISAC; REBECCA VOLZ;
ANDREW KING,

    Defendants - Appellants,

and

JOHN DOE; DEBORAH BORREGO;
DAYNA JOHNSON,

    Defendants.

No. 20-1146

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:19-CV-00371-RBJ-MEH)**
_____

Joshua G. Urquhart, Assistant Attorney General (Philip J. Weiser,
Colorado Attorney General, and Cole J. Woodward, Assistant Attorney
General, with him on the briefs), Denver, Colorado, for Defendants-
Appellants.

David Joseph Feder, Jones Day, Los Angeles, California (Cynthia A.
Barmore and Benjamin C. Mizer, Jones Day, Washington, D.C., and
Samuel Weiss, Rights Behind Bars, Washington, D.C., with him on the
briefs), for Plaintiff-Appellee.

_____

Before **BACHARACH**, **EBEL**, and **MCHUGH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal involves the constitutional right of prisoners to freely exercise their religious beliefs. The issue is whether prison officials violated a clearly established right by banning

- any Native American religious services for at least nine days and

- the use of tobacco for Native American religious services for 30 days.

We conclude that these bans could have violated a clearly established constitutional right.

**1.     Prison officers temporarily ban the use of tobacco for religious services.**

Mr. Charles Williams is a Colorado prisoner who practices a Native American religion that uses tobacco in sweat lodges. The ceremonies are possible because prison officials specified where inmates could use tobacco in religious services.

In 2018, prison officials confiscated tobacco from a prisoner and suspected that it had come from Mr. Williams's religious group. Prison officials responded with a 30-day ban on the use of tobacco for religious services.

**2.  Prison officials later ban any Native American religious services for at least nine days.**

Weeks later, prison officials imposed a lockdown and modified operations, including an indefinite suspension of Native American religious services. Despite this suspension, prison officials allowed Christian and Islamic groups to continue their religious services because outside volunteers could provide supervision. The complaint implies that the suspension lasted at least nine days.

Mr. Williams sued under 42 U.S.C. § 1983, alleging in part that prison officials violated the First Amendment.[1] The defendants moved to dismiss, asserting qualified immunity. The district court denied the motion on the ground that Mr. Williams's allegations had overcome qualified immunity.

**3.  We have jurisdiction.**

When the district court denies a motion to dismiss based on qualified immunity, appellate jurisdiction exists only if the appeal turns on a legal issue. *Weise v. Casper*, 507 F.3d 1260, 1263–64 (10th Cir. 2007). Mr. Williams challenges appellate jurisdiction based on the defendants' assertion of factual arguments.

---

[1]     The complaint included other claims that are not at issue in this appeal.

In their opening brief, the defendants assert that only one Native American service was cancelled during the lockdown. But the complaint stated only when the ban had started, not when it had ended. From the other dates in the complaint, we can infer only that the ban lasted at least nine days. So the assertion in the defendants' opening brief rests on a factual question beyond our jurisdiction. *Perry v. Durborow*, 892 F.3d 1116, 1119–20 (10th Cir. 2018).

But the defendants later conceded that the complaint had alleged that the ban lasted at least 9 days and possibly as long as 30 days. Oral Argument at 3:10–4:12, 5:19–6:56. Given this concession, we have jurisdiction to address the defendants' legal argument on whether a ban lasting at least nine days would have violated a clearly established constitutional right. *Perry*, 892 F.3d at 1120.

## 4. We apply de novo review.

We conduct de novo review of the denial of a motion to dismiss for qualified immunity. *Sanchez v. Hartley*, 810 F.3d 750, 753 (10th Cir. 2016). In conducting this review, we view all of the allegations in the complaint as true and draw reasonable inferences in the light most favorable to the non-moving party (Mr. Williams). *Id.* at 754.

## 5. Mr. Williams has overcome qualified immunity.

To overcome the defendants' assertion of qualified immunity, Mr. Williams must allege facts showing the violation of a constitutional right

4

that had been clearly established. *Id.* The defendants argue only that any violation had not been clearly established.

A right is ordinarily "clearly established" when it's apparent from a precedent or the clear weight of authority from other courts. *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012). Mr. Williams has made this showing.

## A. A single unpublished opinion does not show clear establishment of the right, but we examine all pertinent opinions.

In denying qualified immunity, the district court relied solely on an unpublished opinion: *McKinley v. Maddox*, 493 F. App'x 928 (10th Cir. 2012) (unpublished). The defendants argue that a single unpublished opinion cannot establish qualified immunity. We agree. *See Green v. Post*, 574 F.3d 1294, 1305 n.10 (10th Cir. 2009) ("In determining whether the law was clearly established, we have held that we may not rely upon unpublished decisions."); *see also Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007) ("An unpublished opinion, . . . even if the facts were closer, provides little support for the notion that the law is clearly established. . . ."). But the defendants go further, urging us to confine our review to the opinions that Mr. Williams cited in district court.

Our review is not limited to the opinions cited by Mr. Williams. In determining whether a right is clearly established, we are conducting de novo review of a legal issue, which requires consideration of all relevant case law. *Elder v. Holloway*, 510 U.S. 510, 516 (1994); *see also Cortez v.*

5

*McCauley*, 478 F.3d 1108, 1122 n.19 (10th Cir. 2007) (en banc) ("While it is true that Plaintiffs should cite to what constitutes clearly established law, we are not restricted to the cases cited by them.").

**B.    The indefinite ban on religious services could have violated a clearly established constitutional right.**

It was clearly established that the indefinite denial of any religious services would violate Mr. Williams's right to freely exercise his religious beliefs in the absence of a legitimate penological interest.

To state a valid constitutional claim, a prisoner must allege facts showing that officials substantially burdened a sincerely held religious belief. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). If a substantial burden is shown, officials must identify a legitimate penological interest. *Id.* And if a legitimate penological interest exists, the court must determine the reasonableness of the conduct creating the burden. *Id.* at 1218–19.

On appeal, the defendants argue only that Mr. Williams failed to adequately allege a clearly established burden on his exercise of religious beliefs. So we must consider only whether the law clearly established a substantial burden when prison officials banned religious services for at least nine days.

Officials denied Mr. Williams access to all Native American religious services, including sweat lodges. This denial was clearly a substantial burden under *Yellowbear v. Lampert*, 741 F.3d 48, 56 (10th Cir.

6

2014), which regarded prohibition on participation in a sweat lodge as a substantial burden on the right to exercise one's religion.

*Yellowbear* addressed a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA). *Yellowbear v. Lampert*, 741 F.3d 48, 53 (10th Cir. 2014). Given the difference between RLUIPA and the First Amendment, the defendants oppose using RLUIPA cases to determine whether Mr. Williams's constitutional right was clearly established.

The defendants point to language in *Abdulhaseeb v. Calbone*, 600 F.3d 1301 (10th Cir. 2010), saying that the RLUIPA standards differ from those under the First Amendment's Free Exercise Clause. *Id.* at 1314. But this difference lies in the type of government interest needed to justify a substantial burden, not what constitutes a substantial burden. *Abdulhaseeb* points out that Congress intended for courts to interpret the RLUIPA term "substantial burden" as no broader than the Supreme Court's assessment of what constitutes a "substantial burden" under the First Amendment's Free Exercise Clause. *Id.* at 1315; *accord Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) ("When the significance of a religious belief is not at issue, the same definition of 'substantial burden' applies under the Free Exercise Clause, [the Religious Freedom Restoration Act] and RLUIPA."); *Lovelace v. Lee*, 472 F.3d 174, 198 n.8 (4th Cir. 2006) ("RLUIPA incorporates the 'substantial burden' test used in First Amendment inquiries and expressly refers to the Free Exercise Clause in

allocating its burden of proof."). As a result, anything that constituted a substantial burden under RLUIPA would also have constituted a substantial burden under the First Amendment.

Though *Yellowbear* characterized the ban of a religious service as a substantial burden, the defendants compare their conduct to what took place in *Gallagher v. Shelton*, 587 F.3d 1063 (10th Cir. 2009). In *Gallagher*, we concluded that isolated acts of negligence do not substantially burden the free exercise of religion. *Id.* at 1070. But this comparison fails based on differences in duration and intent.

First, the ban here lasted at least nine days and possibly longer. The complaint states that

- religious services were banned indefinitely on May 4, 2018,

- Christian and Muslim services continued during the following week while Native American services remained suspended, and

- Mr. Williams filed a grievance on May 13, 2018, regarding the suspension of religious services.

But the complaint does not say when officials permitted resumption of Native American religious services.

In oral argument, defense counsel acknowledged that the complaint had alleged an interruption in services for at least 9 days and possibly as long as 30 days. Oral Argument at 5:56–6:10. By contrast, *Gallagher* addressed only 2 occasions of delays in accommodating requests for

religious holidays and 1 incident involving contamination of kosher utensils. *Gallagher*, 587 F.3d at 1070.

Second, the court in *Gallagher* emphasized the unintentional nature of the disruption to religious observance. *Id.* Here, though, authorities allegedly acted intentionally by disallowing tobacco and suspending services. We've noted that our court couldn't locate opinions suggesting "that a conscious or intentional interference with [a prisoner's] right to free exercise, whether relatively brief or not, is consistent with the First Amendment." *Ralston v. Cannon*, 884 F.3d 1060, 1067 & n.8 (10th Cir. 2018); *see also id.* at 1067 n.8 (distinguishing opinions that found no violation because there wasn't adequate evidence of intent). Because Mr. Williams alleges intentional deprivation of any religious services, *Gallagher* does not help the defendants. Intentionally denying access to any religious services is clearly established as a substantial burden under *Yellowbear*.

The defendants point out that the ban in *Yellowbear* was apparently permanent, *see* 741 F.3d at 53, and the denial here was not. But we do not know how long the denial lasted. Defense counsel acknowledged that the complaint had alleged a denial that might have lasted as long as 30 days. Oral Argument at 6:10–6:18. In reality, the ban might have lasted even

9

longer.[2] And we must construe the amended complaint favorably to Mr. Williams. *Sanchez v. Hartley*, 810 F.3d 750, 754 (10th Cir. 2016). So for purposes of the motion to dismiss, we can assume that the ban lasted beyond a single month.

But even a single month would have sufficed, for *Makin v. Colorado Department of Corrections*, 183 F.3d 1205, 1215 (10th Cir. 1999) clearly established a substantial burden for a partial religious deprivation lasting only one month. In *Makin*, prison officials failed to provide meals to an inmate at appropriate times throughout the month of Ramadan. *Id.* at 1208–09. We held that the prison officials had diminished the plaintiff's spiritual experience, burdening his exercise of religion enough to violate the First Amendment. *Id.* at 1212–13. In stating this holding, we recognized that a "complete denial of the ability to observe a religious practice is not required to demonstrate an infringement." *Id.* at 1213.

If a deprivation of appropriately timed meals for a month constitutes a substantial burden under the First Amendment, a complete ban on religious services for a month would also create a substantial burden. And

---

[2] In oral argument, the defendants argued that the ban on any religious services couldn't possibly have outlasted the prohibition against tobacco use. Oral Argument at 6:18–6:29. But Mr. Williams alleged in the complaint that authorities had prohibited religious services because of a lockdown; this prohibition had nothing to do with the ban on tobacco use.

here the prison officials unquestionably acted in a way that diminished Mr. Williams's spiritual experience.

Under *Yellowbear* and *Makin*, Mr. Williams's constitutional right is clearly established. We do not need to decide whether a ban lasting only nine days could constitute a clearly established substantial burden. Even if it could not, dismissal for qualified immunity is unavailable when the complaint lacks enough detail to know how long the ban lasted. *See Thomas v. Kaven*, 765 F.3d 1183, 1196–98 (10th Cir. 2014).

Here the complaint does not specify whether the ban lasted nine days, two weeks, a month, or six months. Because our case law clearly established a substantial burden from a ban lasting 30 days, the defendants are not entitled to dismissal based on qualified immunity.

C.     **The 30-day ban on tobacco use violated a clearly established constitutional right.**

We must also decide whether the law clearly established a substantial burden when authorities imposed a 30-day ban on using tobacco for religious services. To decide this question, we consider two implicit questions:

1.     Did the law clearly establish a right to use objects (like tobacco) for religious purposes?

2.     If "yes," did the law clearly establish a constitutional prohibition when the object is disallowed for 30 days?

11

We answer "yes" to both questions: Our case law clearly established the right of prisoners to use objects required by religious doctrine, and a 30-day prohibition could have violated this right.

Many faiths require the use of objects, such as the Rosary, prayer beads, wine, Sanctus Bell, Crucifix, and incense. We've thus recognized that depriving inmates of particular objects can substantially burden the exercise of religion. *E.g.*, *Kay v. Bemis*, 500 F.3d 1214, 1219–20 (10th Cir. 2007) (holding that the denial of access to tarot cards could violate the Constitution if a prisoner wanted to use them for a religious purpose). For Mr. Williams, tobacco was an object needed for his religious services. And no one contests the sincerity of Mr. Williams's stated need.

The defendants point out that the tobacco ban was limited to 30 days. So we must decide whether a 30-day ban on a religious object could violate a clearly established right. We answer "yes" based on *Makin v. Colorado Department of Corrections*, 183 F.3d 1205 (10th Cir. 1999). There we held that the Constitution required the availability of meals at particular times during the month-long Ramadan fast. *Id.* at 1215; *see* Part 5(B), above. Denial of these meals would substantially burden the free exercise of religion even if prisoners could fast by saving their food from other meals. *See Makin*, 183 F.3d at 1213 ("A complete denial of the ability to observe a religious practice is not required to demonstrate an infringement . . . .").

12

So it is clearly established that a partial denial of religious activities for 30 days could constitute a substantial burden.

The defendants try to distinguish *Makin* by arguing that

- Ramadan is a once-a-year holiday that is especially significant for Muslims and

- the suspension here involved regular services.

But this argument fails for two reasons.

First, the complaint does not specify the importance of tobacco for Mr. Williams's religious practice. We must draw all reasonable inferences favorably to Mr. Williams and can reasonably infer the importance of tobacco to his religious services. *See Sanchez v. Hartley*, 810 F.3d 750, 754 (10th Cir. 2016). Indeed, the defendants acknowledge that Mr. Williams's desire to use tobacco for religious purposes was just as important as "a Muslim inmate's desire to observe Ramadan." Appellant's Reply Br. at 17.

Second, "courts have rightly shied away from attempting to gauge how central a sincerely held belief is to the believer's religion." *Kay v. Bemis*, 500 F.3d 1214, 1220 (10th Cir. 2007) (quoting *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007)). So *Makin* clearly establishes that a 30-day deprivation is long enough for a substantial burden regardless of the centrality of the particular deprivation to a prisoner's religious practice.

The defendants also argue that

- Mr. Williams did not allege that deprivation of tobacco had impeded his full enjoyment of religious events and

- the plaintiff in *Makin* did make such an allegation.

But we must draw all reasonable inferences in Mr. Williams's favor. *Sanchez v. Hartley*, 810 F.3d 750, 754 (10th Cir. 2016). And we can reasonably infer that the denial of tobacco had impeded Mr. Williams's enjoyment of religious services that would normally include tobacco. The 30-day ban on tobacco use would thus have violated a clearly established constitutional right.

* * *

Because Mr. Williams has adequately alleged the violation of a clearly established constitutional right, he has overcome qualified immunity. So we affirm the denial of the defendants' motion to dismiss.