**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DE WITT LAMAR LONG, | No. 22-15997 |
| *Plaintiff-Appellant*, | D.C. No. 1:19-cv-00235-JMS-RT |
| v. | |
| SUGAI, Correctional Sgt. at Halawa Correctional Facility, sued in his/her individual and official capacities; LYLE ANTONIO, Chief of Security at Halawa Correctional Facility, sued in his/her individual and official capacities; WYATT, Correctional Sgt. at Halawa Correctional Facility, sued in his/her individual and official capacities; TORRES, Case Manager/Correctional Counselor at Halawa Correctional Facility, sued in his/her individual and official capacities; INMATE GRIEVANCE OFFICER, Halawa Correctional Facility, sued in his/her individual and official capacities; DOES, John and Jane, 1-50, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, District Judge, Presiding

Argued and Submitted November 8, 2023
Pasadena, California

Filed February 5, 2024

Before:  J. Clifford Wallace, William A. Fletcher, and John
B. Owens, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY[*]

### Prisoner Civil Rights

The panel affirmed in part, reversed in part, and vacated
in part the district court's judgment in favor of prison
officials in an action brought pursuant to 42 U.S.C. § 1983
by Hawaii prison inmate DeWitt Lamar Long, a practicing
Muslim, alleging that prison officials violated his First
Amendment right to free exercise of religion and
unconstitutionally retaliated against him for engaging in
protected First Amendment activity.

The panel reversed the district court's dismissal, at the
screening    stage,    of    Long's    claims    for    injunctive

---

[*] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

relief. Although Long's pro se complaint alleged only past actions by defendants, his "Request for Relief" asked, among other things, that staff be properly trained and that Ramadan meals be served hot. The district court should have allowed Long to amend his complaint to allege facts showing a need for injunctive relief.

The panel vacated the district court's summary judgment in favor of Sergeant Lee, holding that delivery of Long's evening meal at 3:30 p.m. during Ramadan substantially burdened his free exercise of religion. The district court should have evaluated the four factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987), to determine whether the burden was justified. The panel remanded to allow the district court to conduct that analysis.

The panel affirmed the district court's partial summary judgment in favor of Chief of Security Antonio on Long's claim that he was transferred from a medium-security facility to a high-security facility in retaliation for filing grievances. The panel agreed with the district court that the sequence of events leading to the transfer was insufficient to show retaliatory intent.

The panel affirmed the district court' judgment, following a bench trial, in favor of Sergeant Sugai on Long's free exercise of religion and retaliation claims, determining that ample evidence supported the district court's findings.

Finally, the panel affirmed the district court's judgment, following a bench trial, in favor of Chief of Security Antonio on Long's free exercise claim. The district court did not err by concluding that (1) the substantial burden on Long's free exercise rights caused by his transfer to a high-security facility was justified; and (2) Chief of Security Antonio was not authorized to arrange weekly transportation to a

medium-security facility for religious services and therefore was not a proper defendant.

## COUNSEL

Curt Cutting (argued) and Rebecca G. Powell, Horvitz & Levy LLP, Burbank, California; Maxwell Lyster and Macy Merritt (argued), Certified Law Students, Pepperdine Caruso School of Law Ninth Circuit Appellate Advocacy Clinic, Malibu, California; for Plaintiff- Appellant.

Jennifer H. Tran (argued), Caron M. Inagaki, and Isaac H. Kenneth Ickes, Deputy Attorneys General; Anne E. Lopez, Hawaii Attorney General; Hawaii Attorney General's Office, Honolulu, Hawaii; for Defendants-Appellees.

## OPINION

W. FLETCHER, Circuit Judge:

Hawai'i prison inmate DeWitt Lamar Long is a practicing Muslim. In a pro se complaint, he alleged various claims under 42 U.S.C. § 1983 against prison officials, including Sergeant Rodney Sugai, Chief of Security Lyle Antonio, and Sergeant Wyatt Lee. As relevant to this appeal, Long alleged that defendants violated his First Amendment right to free exercise of his religion and unconstitutionally retaliated against him for engaging in protected First Amendment activity.

Long appeals from the district court's screening dismissal of his claims for injunctive relief; its summary

judgment in favor of Sgt. Lee; its partial summary judgment in favor of Chief Antonio; and its judgment after a bench trial in favor of Sgt. Sugai and Chief Antonio.

We reverse the district court's dismissal of Long's claims for an injunction and vacate its summary judgment in favor of Sgt. Lee. We otherwise affirm.

## I. Factual Background

Long is a practicing Muslim. With the exception of a short period in a private prison in Arizona, he has been imprisoned at Halawa Correctional Facility ("HCF") in Aiea, Hawai'i. He was incarcerated in HCF's medium-security facility between December 16, 2015 and May 8, 2017, when he was transferred to HCF's high-security facility.

### A. Non-Pork Meals

Soon after his arrival at HCF in December 2015, Long requested meals consistent with his Islamic faith. He did not insist on a strict halal diet, but he did request a "non-pork diet." Long stated in a prison grievance that after submitting his request he was served meals with pork seven or more times and was not offered a substitute meal. On January 6, 2016, prison officials approved Long's request for a specialized diet. For approximately a month following the approval, Long received accommodating religious meals.

During his time at HCF, Long filed several grievances relating to his meals at the medium-security facility, accusing Sgt. Sugai of harassment and of deliberately denying him non-pork meals, in violation of the posted meal-accommodations list. The district court concluded that Sugai was not responsible for the denial of non-pork meals. The court found that several of the denials occurred before

Long's religious-diet request was approved. The court also found that Sugai did not disregard the posted meal-accommodations list.

In early February 2016, while Sgt. Sugai was overseeing the kitchen, Long received a meal containing pork remnants. Long exchanged the meal for a pre-wrapped substitute vegetarian meal. The district court found that the substitute meal also contained strands of pork and that Long became sick from the meal. Long contended that Sugai had directed inmates who worked in the kitchen to contaminate Long's meal with pork, but the district court found that "any cross-contamination between pork-based foods and Plaintiff's vegetarian foods was not attributable to Sgt. Sugai." The court noted that Gary Kaplan, a prison "program control administrator," attributed the cross-contamination to "the fact that the kitchen uses the same utensils for the vegetarian meal that they use to serve the pork."

Long testified at trial that on at least three occasions between March 2016 and May 2017 Sgt. Sugai prevented him from getting any food at all, and that, at other times, Sugai directed inmate workers to give Long smaller portions. The record contains a signed declaration from an inmate-worker stating that Sugai would direct him to make "Mr. Long's trays smaller than other trays." Crediting Sugai's testimony, the district court found that Sugai had not prevented Long from getting meals and had not directed anyone to give him smaller portions.

On July 23, 2016, Long filed a grievance alleging that Sgt. Sugai had denied him a non-pork meal and had intimidated him by cursing at him and calling him a crybaby. Long testified at trial that the "next time when [he] went to the chow hall," Sugai ordered him to pick up his non-pork

meal and take it back to his housing unit rather than eat in the dining hall. Long testified that Sugai effectively imposed his own version of the prison's "meals to modules" program—a meal-delivery program reserved for inmates whose mental or physical disabilities required that they eat in their cells. Long testified that he was forced to eat in his cell for the next six to eight months. However, the district court found that Sugai had sent Long to eat in his housing unit only a "few times," and that he did so because Long "was being 'argumentative' and 'disruptive' with the kitchen staff regarding the food service."

### B. Transfer to High-Security Facility

On May 8, 2017, three days after he filed his last grievance against Sgt. Sugai, Long was transferred from the medium-security facility to a high-security facility at HCF. Chief Antonio testified at trial that he ordered the transfer to the high-security facility in order to create a "cooling off period" between Sgt. Sugai and Long.

In the high-security facility, Long lost access to many benefits he had enjoyed at the medium-security facility. His telephone use was restricted to fifteen minutes every other day. He was not allowed to buy food in the commissary, to use the microwave, or to use a law library. He was strip searched and escorted when he moved about the facility. Finally, he was unable to attend Friday Jumu'ah prayer services, which were held only in the medium-security facility. Jumu'ah services are "commanded by the Koran and must be held every Friday after the sun reaches its zenith and before the Asr, or afternoon prayer." *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 345 (1987) (citing Koran 62:9–10).

After Long was transferred to the high-security facility, he filed a grievance against Chief Antonio complaining

about the lack of access to prayer services and requesting transportation to Friday Jumu'ah services at the medium-security facility. The request was denied. The district court found that Antonio credibly testified that it was not feasible to transport Long to the medium-security facility to attend the prayer services. Two days after filing another grievance regarding restrictions in the high-security facility, Long was moved to a private prison in Arizona. He was later transferred back to HCF, and was incarcerated there when he filed his complaint in this case.

### C. Evening Meal Delivery during Ramadan

Shortly after his transfer to the high-security facility, Ramadan began. During Ramadan, Sgt. Lee delivered his evening meal to him at about 3:30 p.m.—even though Long could not break his fast until sundown, at about 7:30 p.m. Long stated that by the time he could eat, the food was cold, congealed, and unsafe under prison food-safety guidelines. He stated further that the cold food aggravated his stomach ulcers, and that on several occasions he was "unable to eat the dinner meal." He stated that he asked if Lee could call the kitchen to request a hot meal or allow Long to use a staff microwave to reheat the food. Lee refused, telling Long that the kitchen was closed and that prison policy forbade staff from using a staff microwave to heat food for inmates.

### II. Procedural Background

Long alleged several claims under 42 U.S.C. § 1983 against Sgt. Sugai, Chief Antonio, Sgt. Lee, a case manager named "Ms. Torres," and unnamed Doe defendants in their official and individual capacities. Long was pro se in the district court. He was assigned pro bono counsel for this appeal.

Long alleged § 1983 claims based on First Amendment protections against government infringement on the free exercise of religion and against government retaliation for protected speech. *See Shakur v. Schriro*, 514 F.3d 878, 883 (9th Cir. 2008) (righ to free exercise of religion); *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (right to file grievances). He also alleged a § 1983 claim based on the Fourteenth Amendment's due process clause, contending that the Doe defendants violated his due process rights by failing to respond to and address his prison grievances. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). He requested injunctive relief and damages.

In a screening order, the district court dismissed with prejudice Long's claims for injunctive relief and damages against all defendants in their official capacities. The court dismissed without prejudice Long's § 1983 individual-capacity claims against Ms. Torres and the Doe defendants. The court allowed Long's § 1983 individual-capacity claims against Sgt. Sugai, Chief Antonio, and Sgt. Lee to go forward and ordered that these three defendants be served.

In a subsequent order, the district court granted summary judgment to Sgt. Lee on Long's free exercise claim arising out of the early food delivery during Ramadan. In the same order, the court also granted partial summary judgment to Chief Antonio on Long's retaliation claim arising out of his transfer to the high-security facility.

The remaining claims—Long's free exercise and retaliation claims against Sgt. Sugai and his free exercise claim against Chief Antonio—went to trial. After a bench trial, the district court entered judgment for Antonio and Sugai.

### III.  Discussion

### A.  Screening of Claims for Injunctive Relief

As noted above, at the screening stage, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), the district court dismissed with prejudice Long's claims for injunctive relief.  Long did not ask the district court for leave to amend.

The standard for dismissal for prisoner claims at screening is the "same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citing *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc)).  We review the dismissal of a pro se prisoner's complaint at screening de novo.  *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) (citing *Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997)); *Watison*, 668 F.3d at 1112.

The district court correctly noted that Long's pro se complaint alleged only past actions by defendants.  However, in the "Request for Relief," Long's complaint asked "that staff rea[ss]ess their policy and proce[]dures, and be properly trained so as the religious rights of all are respected equally[;] that the policy or practice of not allowing (High) prisoners to attend Friday Islamic services be changed, as well as during Ramadan evening meals be served hot and or the microwave be made available."

For claims under the PLRA, we have "held that 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez*, 203 F.3d at 1130.

Long, who is currently incarcerated at HCF, argues that he should have been allowed to amend the complaint to allege facts showing a need for injunctive relief. We agree. Because we can "conceive of facts" that would justify injunctive relief, the district court should have granted leave to amend. *Scott v. Eversole Mortuary*, 522 F.2d 1110, 1116 (9th Cir. 1975).

### B. Summary Judgment

We review a district court's grant of summary judgment de novo. *Lopez*, 203 F.3d at 1131. We must "determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.*

### 1. Free Exercise Claim against Sgt. Lee

As noted above, while Long was confined in the high-security facility during Ramadan, Sgt. Lee brought Long's evening meal to him at about 3:30 p.m. By the time Long could break his fast at about 7:30 p.m., the food was cold, unappetizing, and potentially unsafe to consume. The food also exacerbated his stomach ulcers. Long contended that delivering his evening meal during his fast violated the Free Exercise Clause of the First Amendment. The district court granted summary judgment to Lee.

In granting summary judgment, the district court relied on a single case, *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993), in which we held that serving prisoners unappetizing but nutritious "Nutraloaf" did not constitute cruel and unusual punishment under the Eighth Amendment. We wrote in *LeMaire* that food "served cold, while unpleasant, does not amount to a constitutional deprivation."

*Id.* (quoting *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985)).

*LeMaire*, decided under the Eighth Amendment, does not control Long's First Amendment claim. The question in the case before us is not whether serving cold, unappetizing, and possibly unsafe food is cruel and unusual punishment. Rather, it is whether serving such food unconstitutionally burdened Long's free exercise of his religion.

In ruling on a prisoner's First Amendment free exercise claim, we first determine whether the challenged prison policy or practice substantially burdened the prisoner's free exercise of his or her religion. *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). If it does, we then apply the four factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987), to determine whether the burden was "reasonably related to legitimate penological interests." *Shakur*, 514 F.3d at 884 (quoting *Turner*, 482 U.S. at 89).

Viewing the evidence in the light most favorable to Long, by the time Long could eat his evening meal at about 7:30 p.m., the food was often inedible and potentially unsafe, and, if eaten, exacerbated his stomach ulcers. We take judicial notice of the fact that some food cannot safely sit at room temperature for four hours. *See Food Facts: Serving Up Safe Buffets*, F.D.A. (2017), https://www.fda.gov/food/buy-store-serve-safe-food/serving-safe-buffets [https://perma.cc/36EW-CVJ5] (strongly advising that perishables left at room temperature for more than two hours be discarded); *Leftovers and Food Safety*, U.S.D.A., https://www.fsis.usda.gov/food-safety/safe-food-handling-and-preparation/food-safety-basics/leftovers-and-food-safety [https://perma.cc/QQ8F-G8CP] (last updated July 31, 2020) (describing food left out

for more than two hours as in the "danger zone" because bacteria can rapidly grow at room temperature); *10 Dangerous Food Safety Mistakes*, C.D.C., https://www.cdc.gov/foodsafety/ten-dangerous-mistakes.html [https://perma.cc/DTG7-Y4SX] (last updated Oct. 24, 2023).

The evidence before the district court, viewed in the light most favorable to Long, establishes that the 3:30 p.m. delivery of Long's evening meal during Ramadan substantially burdened his free exercise of his religion. A "substantial burden exists when the state places 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Jones v. Slade*, 23 F.4th 1124, 1142 (9th Cir. 2022) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)). "[M]ore than an inconvenience on religious exercise," a substantial burden has "a tendency to coerce individuals into acting contrary to their religious beliefs." *Jones v. Williams*, 791 F.3d 1023, 1031–32 (9th Cir. 2015) (quoting *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013)). A prison practice "may impact religious exercise indirectly, by encouraging an inmate to do that which he is religiously prohibited or discouraged from doing." *Slade*, 23 F.4th at 1140; *see also Warsoldier*, 418 F.3d at 995 ("[C]ompulsion may be indirect. . . ." (quoting *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981))).

We have consistently held that the failure to provide food consistent with a prisoner's sincerely held religious beliefs constitutes a substantial burden on the prisoner's free exercise. In *Shakur*, 514 F.3d at 881–82, a Muslim prisoner requested a kosher meat diet consistent with Islamic Halal requirements because the vegetarian diet offered to him gave him gas and irritated his hernia. When the prison denied his request, he brought an action under the Free Exercise Clause.

*Id.* at 882–883.    We held that the prison's refusal "implicate[d] the Free Exercise Clause" and that the district court was therefore required to analyze the *Turner* factors. *Id.* at 885; *see also McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987) (per curiam) ("Inmates . . . have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion."); *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993) (holding same); *Ashelman v. Wawrzaszek*, 111 F.3d 674, 677 (9th Cir. 1997) (holding same).

Our sister circuits agree that nourishment consistent with a prisoner's religious beliefs and practices must be provided in a reasonable manner.  *See*, *e.g.*, *Holland v. Goord*, 758 F.3d 215, 218 (2d Cir. 2014) (holding that pressure "to provide a urine sample by drinking water during [inmate's] fast . . . placed a substantial burden on [his] religious exercise."); *Lovelace v. Lee*, 472 F.3d 174, 199–200 (4th Cir. 2006) ("Under . . . the Free Exercise Clause . . ., a prisoner has a 'clearly established . . . right to a diet consistent with his . . . religious scruples,' including proper food during Ramadan." (last two ellipses in original) (quoting *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003))); *Ford*, 352 F.3d at 597 (recognizing a clearly established right to the Eid ul Fitr feast, which celebrates the successful completion of Ramadan); *Love v. Reed*, 216 F.3d 682, 689 (8th Cir. 2000) (finding that prison officials substantially burdened an inmate's free exercise rights by refusing to provide meals in his cell at particular times to accommodate his religious practices).

*Makin v. Colorado Department of Corrections*, 183 F.3d 1205, 1215 (10th Cir. 1999), is directly on point.  There, a Muslim prisoner housed in punitive segregation during Ramadan was unable to eat his evening meal when it was

delivered to his cell. *Id.* at 1208–09. To maintain his fast, he saved his "supper and food such as dry cereal and crackers . . . from lunch and breakfast" to eat after sundown. *Id.* at 1209. Although the inmate managed to fast under these circumstances for the entire month of Ramadan, the Tenth Circuit held that the prison's actions infringed on the inmate's right to free exercise of his religion and that the defendants had not offered "any legitimate penological interests to justify that infringement" under *Turner*. *Id.* at 1214. In *Williams v. Hansen,* 5 F.4th 1129, 1134–35 (10th Cir. 2021), the court characterized *Makin* as "clearly establish[ing] a substantial burden for a partial religious deprivation" where "prison officials failed to provide meals to an inmate at appropriate times throughout the month of Ramadan."

Our own cases as well as out-of-circuit cases thus clearly establish that delivery of Long's evening meal at 3:30 p.m. during Ramadan substantially burdened his free exercise of religion. The district court should have evaluated the four *Turner* factors to determine whether the burden was justified. Because the court did not conduct that analysis, we remand to allow it to do so. The district court also did not conduct a qualified immunity analysis. If the court concludes, after conducting the *Turner* analysis, that the burden was not justified, our remand allows the court to conduct a qualified immunity analysis.

### 2. Retaliation Claim against Chief Antonio

As noted above, Chief Antonio transferred Long from the medium-security facility to the high-security facility within HCF after Long filed grievances against Sgt. Sugai. Long contended that the transfer was retaliation for filing the

grievances, in violation of the First Amendment.  The district court granted summary judgment to Antonio on this claim.

A successful First Amendment retaliation claim by a prisoner requires "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567–68 (footnote omitted).  With respect to the fifth factor, the Supreme Court has cautioned that "'federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment,' especially with regard to 'the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims.'" *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482–83 (1995)).

The district court found that the first, third, and fourth factors weighed in favor of Long.  However, with respect to the second and fifth factors, the court found that Chief Antonio's transfer advanced the legitimate correctional goal of maintaining order and safety within the prison, and that there was insufficient evidence to show that this asserted goal was pretextual.  To establish impermissible motivation, Long must "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [Antonio's] intent" in transferring Long.  *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2005)).

Chief Antonio maintained that he transferred Long for permissible reasons:  He stated that he was aware that Long "had complained of harassment and retaliation by Adult

Correctional Officer ('ACO') Rodney Sugai," and that reports "had been prepared by HCF Staff, including ACO Sugai that related to Plaintiff's misconducts." He further stated that "[b]ased on these circumstances, [he] decided that it was in the best interest of Plaintiff and ACO Sugai to separate them in order to 1) prevent any further conflicts, 2) to allow time for HCF administration to investigate the complaints, and 3) in the case that the allegations were substantiated to prevent any further improper conduct on the part of either party. [] Because ACO Sugai was responsible for the kitchen area that the [medium-security facility] utilizes, it was necessary to move Plaintiff to the Special Needs Facility ('SNF')."

Pointing only to this sequence of events, Long asks us to infer that Chief Antonio had a retaliatory motive. We agree with the district court that this sequence, standing alone, is insufficient to show retaliatory intent. Without additional evidence, there is no genuine dispute of material fact over whether Antonio transferred Long based on an improper motive.

## C.  Bench Trial

After a bench trial, the district court ruled against Long on his three remaining claims: two against Sgt. Sugai and one against Chief Antonio. On appeal, Long challenges several findings supporting the district court's rulings. We can reverse "only if the district court's findings are clearly erroneous to the point of being illogical, implausible, or without support in inferences from the record." *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 613 (9th Cir. 2020). A finding is "clearly erroneous" only when the reviewing body, looking at the entire body of evidence, "is left with the definite and firm

conviction that a mistake has been committed." *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1984)).

### 1.  Claims against Sgt. Sugai

The district court tried the free exercise and retaliation claims against Sgt. Sugai.

### a.  Free Exercise

Long contended that Sgt. Sugai had violated his First Amendment free exercise right in four ways: (1) denying Long non-pork meals; (2) directing kitchen workers to contaminate Long's meal with pork strands; (3) directing kitchen workers to give Long smaller portions; and (4) forcing Long to eat in his housing unit for six to eight months.

The district court rejected Long's contentions.  As to (1), the district court found that, to the extent that Long was denied non-pork meals, Sugai was not responsible for the denials.  The court held that the evidence showed that, on the occasions at issue, Long was not on the meal-accommodations list and that Sugai had no role in compiling that list.  As to (2) and (3), crediting Sugai's testimony, the court found that Sugai did not so direct kitchen workers.  As to (4), the court found that Sugai directed Long to take his meals in his housing unit on only a few occasions and that he did so based on permissible security concerns.  Ample evidence supports the district court's findings.

### b.  Retaliation

Long contended that Sgt. Sugai retaliated against him for exercising his First Amendment right to file grievances.  The

alleged retaliatory acts were the same predicate acts as for Long's free exercise claim against Sugai. The district court rejected his retaliation claim for the same reasons it rejected his free exercise claims. Ample evidence supports the district court's findings.

### 2. Claim against Chief Antonio

The district court also tried the free exercise claim against Chief Antonio. Long contended that Antonio violated his First Amendment free exercise right in two ways: (1) by transferring him to the high-security facility where there were no Friday Jumu'ah prayer services, and (2) by refusing to arrange transportation to the medium-security facility so that Long could attend Jumu'ah services there. As to (1), the district court concluded that Long's free exercise rights were substantially burdened by the transfer, but after applying the four *Turner* factors, the district court found that the burden was justified. We find no error in that conclusion. As to (2), Antonio testified that he would have forwarded any request to attend religious services to an official with authority to approve such requests. Based on this testimony, the court found that Antonio was not authorized to arrange weekly transportation to the medium-security facility for religious services, and that he was therefore not a proper defendant. We also find no error in that conclusion.

### Conclusion

The district court's judgment is **AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED.**

Each side shall bear its own costs on appeal.