FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MAURICE LYDELL HARRIS,

*Plaintiff - Appellant*,

v.

CLERIC MUHAMMAD, AKA: K.
Fasish; JACKSON, SQSP Christian
Chaplain; CHARLES RICHEY,
Chaplain, Community Resources
Manager of the CDCRs Division of
Adult Institutions Religious Programs
Oversight Unit,

*Defendants - Appellees*.

No. 24-3307

D.C. No.
4:21-cv-00283-
HSG

OPINION

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam, Jr., District Judge, Presiding

Argued and Submitted September 17, 2025
San Francisco, California

Filed February 4, 2026

Before: David F. Hamilton, Ryan D. Nelson, and Patrick J. Bumatay, Circuit Judges.[*]

Opinion by Judge R. Nelson

**SUMMARY**[**]

**First Amendment / Religious Land Use and Institutionalized Persons Act**

The panel vacated the district court's denial of a preliminary injunction, and remanded for further proceedings, in an action brought by Maurice Lydell Harris, a California state prisoner, who sought a diet consistent with his religious beliefs.

Harris, a Nichiren Buddhist, asserted a sincere religious belief in the need to eat cleanly and enrolled in the halal prison diet as the option he believed most closely aligned with his religious needs. The prison disenrolled Harris from the religious diet program after he purchased non-halal items from the prison commissary. He challenged that decision, alleging violations of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA).

The panel held that the district court erroneously dictated the content of Harris's beliefs and questioned the centrality

---

[*] The Honorable David F. Hamilton, United States Circuit Judge for the Court of Appeals, 7th Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of those beliefs. Under a proper analysis, Harris could demonstrate a substantial burden of his religious exercise. And if so, then the government must show that its regulation is the least restrictive means of achieving a compelling government interest. If Harris's RLUIPA claims are likely to succeed, then the remaining factors would tip sharply in Harris's favor. Accordingly, the panel vacated the district court's denial of Harris's request for a preliminary injunction and remanded for the district court to conduct a new analysis of whether Harris demonstrated a substantial burden on his religious exercise.

## COUNSEL

Adela Lilollari (argued), Wilmer Cutler Pickering Hale and Dorr LLP, Boston, Massachusetts; Matthew T. Martens, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.; for Plaintiff-Appellant.

Gurpreet Sandhu (argued), Deputy Attorney General; Office of the California Attorney General, San Francisco, California; Martha P. Ehlenbach, Jaime Ganson, and George R. Morris, Deputy Attorneys General; Neah Huynh, Supervising Deputy Attorney General; Monica N. Anderson, Senior Assistant Attorney General; Rob Bonta, California Attorney General; Office of the California Attorney General, Sacramento, California; for Defendants-Appellees.

Jeffrey C. Mateer, David J. Hacker, Stephanie Taub, and Everett C. Marti, First Liberty Institute, Plano, Texas, for Amicus Curiae First Liberty Institute.

**OPINION**

R. NELSON, Circuit Judge:

Maurice Lydell Harris is a prisoner in the California prison system. He is a Nichiren Buddhist and asserts a sincere religious belief in the need to eat cleanly. He enrolled in the halal prison diet as the option he believes most closely aligns with his religious needs. The prison disenrolled Harris from the religious diet program after he purchased non-halal items from the prison commissary. He challenged that decision, alleging violations of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). The district court denied a preliminary injunction. The district court erred in concluding that Harris had no likelihood of success under RLUIPA by wrongly questioning whether a halal diet is central to Harris's Nichiren Buddhist beliefs. We accordingly vacate and remand for further proceedings consistent with this opinion.

I

Maurice Lydell Harris, a practicing Nichiren Buddhist since 2007, is incarcerated in the California prison system. His beliefs require him to "eat wisely" and avoid contaminating his body with "non-clean" food. He strives to limit his diet to foods "not highly processed," "organic," "[n]ot artificial or synthetic," "[d]escribed as natural," and which do not "have a chemical-sounding name." Harris also tries to eat meat as close "to its natural state as possible."

In 2007,[1] Harris asked the prison to provide a diet that complies with his religious beliefs. Just one problem: the California Department of Corrections and Rehabilitation did not offer a Nichiren Buddhist diet that fully complied with Harris's religious practice. Instead, Harris could choose from four alternatives to the standard prison diet: kosher, vegetarian, plant-based, and the Religious Meat Alternative Program (RMAP). RMAP offers the standard prison diet, except that the meat is certified halal. Cal. Code Regs. tit. 15, § 3054.4(c). Halal meat is slaughtered according to Islamic religious requirements, which typically requires that the animal is healthy at the time of slaughter and all blood is drained from the carcass. While RMAP is not a one-to-one match of Harris's religious beliefs, a prison chaplain advised Harris that it was "the only religious diet she can offer which best compliment[ed]" his request. Following the chaplain's advice, Harris accepted the diet "as an accommodation to [his] 'religious practice.'"

RMAP enrollees must agree to certain dietary restrictions and monitoring of their diets. *Id.* § 3054.6(b)(3), (f). In Harris's case, he agreed that he could not purchase or consume any food items not part of his religious diet. RMAP enrollees are, however, allowed to eat food that does not comply with their religious diet if RMAP compliant meals are unavailable. Inmates must abide by these restrictions or they will lose enrollment. *See id.* § 3054.6(f). The prison explains that these regulations are necessary because providing specialized religious diets to inmates is costly. By enforcing these regulations, California argues that it screens out inmates who insincerely enroll in a religious diet

---

[1] There is some confusion whether Harris made the request in 2007 or 2010.

program because they prefer the food provided to the ordinary prisoner diet.

From 2017 to 2018, Harris complained that the prison enacted changes to RMAP meals, making the meals unable to sustain him. The prison was allegedly replacing halal meat with vegetarian options. This "negatively affect[ed] his health," causing him to "feel light headed" and exacerbating his "history of fainting from lack of nutriments." During this time, a doctor told Harris to increase his calorie and protein intake because of his irregular heartbeat. These symptoms stymied his Nichiren Buddhist "goal" of achieving "enlightenment" or "Buddhahood," which "requires him to maintain his strength and focus." As a result, Harris bought additional food from the commissary, including non-halal products.

In 2018, California correctional institutions computerized their oversight of the religious-diet programs, which allowed prison officials to track dietary violations more efficiently. Prison officials conduct quarterly oversight reviews. When a prison official identifies a violation, officials give the inmate a written notice without penalty. *Id.* § 3054.9(a)(2). Enrollees may be subject to removal from the program, however, if they commit two violations within six months. *Id.* § 3054.9(a)(3). A religious review committee determines whether violators may remain enrolled case-by-case. *See id.* §§ 3054.3(g), 3054.9(d).

Soon after the 2018 computerization, the prison found Harris in violation of RMAP requirements. Because RMAP provides halal certified meat to inmates, enrollees who consistently purchase non-halal certified meat products risk disenrollment. Harris received multiple violation notices for canteen purchases containing non-halal products, including

beef- and chicken-flavored instant ramen soups, pork rinds, beef steaks, and salami. Many of these items appear highly processed, contain artificial sounding ingredients, and are not GMO-free.

Harris received his first notice of violation in 2019 for his purchase of non-halal food, including instant ramen noodle soup. He defended his purchase since "ramen soups are such a staple in Nichiren Buddhist culture that adherents promulgate, and work, in ramen restaurants." Thus, he said that ramen soups do not violate his religious diet or his beliefs.

Harris continued purchasing non-halal products from 2020 through 2022. In 2023, Harris bought non-halal ramen and other foods and received two notices of violation within six months. As a result, the review committee disenrolled Harris from RMAP.

In 2021, in response to several notices of violation, Harris filed a pro se complaint against several named and unnamed defendants. The district court screened the complaint, removed several named defendants and all unnamed defendants, and concluded the complaint "stated cognizable claims for violation" of the First Amendment's Free Exercise Clause and Establishment Clause, the Eighth Amendment, the Equal Protection Clause, and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Later that year, Harris amended his complaint.

Harris sought preliminary injunctive relief. He explained that "Defendants are conditioning his ability to maintain a GMO-free diet, as his Buddhist religion requires," and asked the court to grant him equitable relief to continue eating ramen and other non-halal foods while remaining on RMAP. The district court denied injunctive

relief because "the RMAP diet is not the GMO-free diet Plaintiff contends is required by his religion." *Harris v. Muhammad*, 2022 WL 3030529, at \*3 (N.D. Cal. Aug. 1, 2022).

Two years later, Harris once again sought injunctive relief to be "replaced back into the" RMAP without being restricted to buying only halal foods from the canteen. Again, the district court denied relief because "[e]xpulsion from the RMAP diet would . . . not affect [Harris's] ability to observe his religion, as guaranteed by the First Amendment's free exercise clause or by RLUIPA." *Harris v. Muhammad*, 2024 WL 1745021, at \*6 (N.D. Cal. Apr. 23, 2024). This timely appeal followed.

II

The district court had subject matter jurisdiction under 28 U.S.C. § 1343(a)(4). We have subject matter jurisdiction to review the district court's denial of a preliminary injunction under 28 U.S.C. § 1292(a)(1). Harris has also established Article III standing.[2] *See Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1128 (9th Cir. 2013).

---

[2] In opposition to Harris's first request for injunctive relief, defendants claimed the appropriate officer was "Chaplain C. Richey." But defendants backtracked in their opposition to Harris's second request for relief because "Richey is not involved in these decisions" and instead, alluded to two individuals not currently named as parties: "Corcoran Chaplain Ugwu and Community Resources Manager Robicheaux." Given defendants' own statements that Richey would be an appropriate defendant for an injunction, it is reasonable to conclude that Harris has established standing at this preliminary stage. On remand, the district court should ensure standing exists and allow any reasonable amendment by Harris to name the proper defendant.

We review the district court's denial of a preliminary injunction for abuse of discretion. *See Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996). "Questions of law are reviewed de novo." *Jauregui v. City of Glendale*, 852 F.2d 1128, 1131 (9th Cir. 1988).

"The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleadings' of pro se litigants." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (citation omitted). "This rule is particularly important in civil rights cases," *id.*, like this one, when a plaintiff files his complaint pro se and asserts constitutional and RLUIPA claims.

## III

To obtain a preliminary injunction, Harris must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009) (burden for each *Winter* factor on party seeking relief). The district court erred by considering impermissible factors when it held that Harris is unlikely to succeed on the merits. If Harris shows an injury to his religious freedom rights, then the other factors will likely tip in his favor. We therefore vacate and remand.

## A

### 1

"Congress enacted RLUIPA . . . to vindicate and protect prisoners' religious freedom rights." *The Federal Role in Enforcing Religious Freedoms in Prison: Briefing Before the U.S. Comm'n on Civil Rights*, 34:8–10 (2024) (statement of Professor Joshua C. McDaniel). RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability." 42 U.S.C. § 2000cc-1(a). The government may do so, however, if the "imposition of the burden on that person . . . is in furtherance of a compelling governmental interest; and . . . is the least restrictive means of furthering that compelling governmental interest." *Id*. RLUIPA should be construed broadly to "favor a broad protection of religious exercise, to the maximum extent permitted by the terms of . . . the Constitution." *Id.* § 2000cc-3(g).

Harris bears the burden to prove a prima facie claim by showing a substantial burden on his religious exercise. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). Once that initial burden is satisfied, the government "bear[s] the burden of persuasion to prove that any substantial burden on [Harris's] exercise of his religious beliefs is both in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest." *Id.* at 995 (cleaned up). The district court held that Harris failed to demonstrate a prima facie case because "the RMAP diet is not providing Plaintiff with the diet required by his religion." This was an error.

2

"Inmates . . . have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987); *see also Long v. Sugai*, 91 F.4th 1331, 1337 (9th Cir. 2024) ("[F]ailure to provide food consistent with a prisoner's sincerely held religious beliefs constitutes a substantial burden on the prisoner's free exercise.").[3]  Prison officials may deny a special diet if they find that the prisoner is insincere in his religious beliefs. *See McElyea*, 833 F.2d at 198.  But a prisoner's claim that he sincerely believes a religious alternative is appropriate, combined with a claim that being excluded interferes with his faith, usually satisfies the test. *Cf. Shakur v. Schriro*, 514 F.3d 878, 889 (9th Cir. 2008) (prisoner sincerely believed the kosher diet satisfied his Muslim religion).

RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A).  And a substantial burden is when the state "denies an important benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Shakur*, 514 F.3d at 888 (cleaned up).  RLUIPA "does not require" a prisoner "to show his religious exercise . . . was required by his faith or consistent with his past observance." *Slade*, 23 F.4th at 1142–43.

---

[3] While these cited cases focus on First Amendment challenges rather than RLUIPA, First Amendment analyses can inform our understanding of substantial burdens under RLUIPA. *See Jones v. Slade*, 23 F.4th 1124, 1139 (9th Cir. 2022) (RLUIPA protections are "more generous to the religiously observant than the Free Exercise Clause").

Harris sufficiently shows that the prison imposed a substantial burden on his religious exercise as he understands and interprets his faith. His Second Amended Complaint details how his removal from RMAP leaves him to choose "between his religious diet or receiving a prison violation, and possible loss of his religious diet accommodation of fifteen years." By conditioning his ability to receive the diet which most aligns with his beliefs on whether he keeps Islamic dietary laws, Harris has shown a substantial burden on his religious exercise. *See Apache Stronghold v. United States*, 101 F.4th 1036, 1091 (9th Cir. 2024) (en banc) (Nelson, J., concurring) ("A government act imposes a substantial burden on religious exercise if it (1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief.") (cleaned up).

Holding otherwise imposes a judicial assessment of what diet is required by Harris's Nichiren Buddhist faith, which is the incorrect mode of analysis. The district court concluded that Harris "is unlikely to succeed on the merits of his claim because the RMAP diet is not providing Plaintiff with the diet required by his religion." The district court reasoned that "whether meat is certified halal is irrelevant to his religious dietary restrictions." Thus, the district court concluded that "[e]xpulsion from the RMAP diet would . . . not affect Plaintiff's ability to observe his religion, as guaranteed by the First Amendment's free exercise clause or by RLUIPA."

But "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the

validity of particular litigants' interpretations of those creeds." *Shakur*, 514 F.3d at 884 (citation omitted).  Judges ought not be Pharisees, decreeing from on high what practices are relevant to a prisoner's understanding of his own faith.  *See Matthew* 23:23.  It is for Harris to determine whether being on RMAP satisfies Harris's Nichiren Buddhist beliefs.  And if external forces cause Harris to fall short of the exact dictates of his religion, it is for him and his conscience, not us as courts, to decide what compromises are appropriate.  Thus, it is sufficient that Harris asserts that he sincerely believes that the RMAP program "is closest to his spiritual needs."  In holding that an Islamic diet is not required by Harris's Buddhist faith, the district court erred by discounting Harris's own understanding of his faith—that he should eat meat as close "to its natural state as possible"— and instead reduced his faith to requiring a non-GMO diet.[4]

*Shakur* bars this type of judicial reasoning.  Shakur, who was Muslim, was bound by the halal dietary requirements.  But he "assert[ed] that he sincerely believe[d] that the kosher meat diet already provided to Jewish inmates would be consistent with his religious faith." *Shakur*, 514 F.3d at 885. It mattered not that a practicing Muslim would eat only halal meat, *see id.* at 882 n.2, or that kosher meat would therefore not satisfy that standard, *id.* at 882.  We held that denying Shakur kosher meat burdened his religious exercise.  What mattered was that the prisoner sincerely believed that his religious beliefs favored kosher meat.

---

[4] Harris refers to his diet as a non-GMO diet in his complaint.  And when he claims his religion instructs him to eat meat as close "to its natural state as possible," he references a non-GMO diet.  But as explained, courts should not decide what Harris's religion requires, and Harris asserts that he enrolled in RMAP on the advice of a prison chaplain.

So too here.  Harris believes that Islamic slaughter and animal husbandry makes that meat religiously permissible under the dictates of his religious conscience.  Harris's departures from the Islamic diet—or even a Buddhist diet— do not demonstrate that his beliefs do not require him to adhere to that diet if possible.  "[A] sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance; for where would religion be without its backsliders, penitents, and prodigal sons?" *Grayson v. Schuler*, 666 F.3d 450, 454 (7th Cir. 2012).  Each man's faith is his own, and judges must avoid questioning whether a prisoner has strictly abided by the letter of his own sincere belief.

The district court erred by considering these backslides as part of a centrality inquiry (i.e., concluding that expulsion from RMAP would not affect Harris's ability to practice his own religion).  Thus, we vacate and remand for the district court to reassess Harris's prima facie substantial burden argument.

Although courts may not determine what actions are dictated by a plaintiff's personal religious beliefs, a court may determine whether those beliefs are sincerely held.  *See Shakur*, 514 F.3d at 885 (adopting sincerity test); *Burwell v. Hobby Lobby*, 573 U.S. 682, 717–19 (2014).  Sincerity is a low bar, and all that it requires is "to determine whether the line drawn reflects an honest conviction." *Burwell*, 573 U.S. at 725 (cleaned up); *see also Ackerman v. Washington*, 16 F.4th 170, 180 (6th Cir. 2021).  In other words, sincerity is a permissible inquiry for courts to make; centrality is not.  This rule makes sense.  RLUIPA does not entitle insincere believers in the "Church of Surf 'n' Turf" to luxury lobster and steak dinners.  But it also protects the rights of sincere believers, who may not fully adhere to their stated beliefs.

Neither the district court nor the prison inquired into the sincerity of Harris's beliefs, only their centrality to his religion. The district court should consider that issue in the first instance.

If, after that inquiry, the district court concludes that Harris's religion was substantially burdened, then the government must show that its regulation is the least restrictive means to achieve its compelling interest. The government has not yet established whether forcing Harris off RMAP satisfies this standard. *See Warsoldier*, 418 F.3d at 998–99 (prison officials have the burden to "establish that the . . . policy is the least restrictive alternative"). If the government cannot establish that its regulation is the least restrictive alternative, then Harris would have a likelihood of success on the merits of his RLUIPA claim.

B

If Harris can show a likelihood of success on the merits, then he likely prevails on the other factors as well. Infringement on religious liberties is significant irreparable harm. *See id.*, 418 F.3d at 1001; *see also Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (RLUIPA infringement carries same irreparable nature as a First Amendment harm). Harris plausibly alleges that he must sacrifice his health or his beliefs.

The balance of the equities would also favor the narrow equitable relief requested. Harris has shown that his access to the RMAP will further his spiritual needs. On the other hand, the state only cautions generally that courts should minimally intrude "into the affairs of state prison administration," which requires "fashion[ing] the least intrusive remedy that will still be effective" in righting federal violations. *Toussaint v. McCarthy*, 801 F.2d 1080,

1086 (9th Cir. 1986) (citation omitted); *accord Brown v. Plata*, 563 U.S. 493, 531 (2011).  The narrow and temporary equitable relief Harris requests—staying on RMAP while awaiting a merits ruling—falls within that minimally intrusive approach.

The public interest would also favor Harris.  *See Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012); *cf.* § 2000cc-3(g) (Congress afforded "religious exercise" "broad protection" under RLUIPA).  Harris only requests to be reenrolled in RMAP while being allowed to supplement his diet, not to create a new Buddhist diet or any other broad exception.

## IV

The district court erroneously dictated the content of Harris's beliefs and questioned the centrality of those beliefs.  Under a proper analysis, Harris could demonstrate a substantial burden of his religious exercise.  And if so, then the government must show that its regulation is the least restrictive means of achieving a compelling government interest.  If Harris's RLUIPA claims are likely to succeed, then the remaining factors would tip sharply in Harris's favor.  We therefore vacate and remand for the district court to conduct a new analysis of whether Harris has shown a substantial burden on his religious exercise.

**VACATED AND REMANDED.**